[No. S051561. Dec. 5, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM ROYAL HAZELTON, Defendant and Respondent.

**COUNSEL**

Gary T. Yancey, District Attorney, and L. Douglas Pipes, Deputy District Attorney, for Plaintiff and Appellant.

Gil Garcetti, District Attorney (Los Angeles), George M. Palmer and Aaron Singer, Deputy District Attorneys, Kent S. Scheidegger and Charles L. Hobson as Amici Curiae on behalf of Plaintiff and Appellant.

Charles H. James, Public Defender, and Ron Boyer, Deputy Public Defender, for Defendant and Respondent.

**OPINION**

**BROWN, J.**—The issue in this case is whether an out-of-state conviction qualifies as a "strike" under the "three strikes" provision of Proposition 184. (Pen Code,[1] § 1170.12.) Unlike its legislative predecessor, section 667, subdivisions (b)-(i), this portion of section 1170.12 is ambiguous regarding whether it includes out-of-state convictions. We conclude, in light of the unequivocal evidence of voters' intent, that the statute is properly construed to include such convictions.

## I. FACTS AND PROCEDURAL BACKGROUND

Defendant William Royal Hazelton was charged with felonies in two separate complaints filed in Contra Costa County in May and August 1994. The first complaint alleged that he had suffered a single prior felony conviction within the meaning of section 667, subdivisions (d) and (e), the legislative version of the "three strikes" law. The second complaint alleged

[1] All statutory references are to the Penal Code unless otherwise indicated.

that defendant had suffered two prior felony convictions under section 667, subdivisions (d) and (e), one of which was an attempted rape in Nevada. Before these cases were adjudicated, the initiative version of the "three strikes" law, which added section 1170.12 to the Penal Code, was adopted and became operative.

In response to defendant's motion, the trial court ruled that under section 1170.12, defendant's out-of-state prior "may be used for two strike . . . [but] not for three-strike purposes." The People's request to reinstate the prior conviction allegation was denied, and they appealed. (§ 1238, subd. (a)(9).)

The Court of Appeal consolidated the appeals and reversed and remanded. We granted defendant's petition for review.

## II. DISCUSSION

In March 1994, the Legislature enacted its version of the "Three Strikes and You're Out" law by amending section 667. In general, the legislation provides longer sentences for certain prior serious or violent felonies popularly denoted "strikes." A "two strike" case involves one prior qualifying felony; a "three strike" case involves two or more prior qualifying felonies. Predicate prior felonies are defined in section 667, subdivision (d), as: "(1) Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state"; "(2) A conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison [and] . . . includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7"; and "(3) [Certain] prior juvenile adjudication[s]."

A defendant with three strikes, i.e., "two or more prior felony convictions *as defined in subdivision (d),*" must be sentenced to an indeterminate term of life imprisonment for the current felony conviction, with a minimum term generally calculated as the greater of three times the term otherwise provided for each current felony conviction; twenty-five years; or the term required by section 1170 for the current conviction, including any enhancements. (§ 667, subd. (e)(2)(A), italics added.) Thus, because the three strikes provision of section 667 refers to all of subdivision (d), and subdivision (d) defines a prior felony conviction as including out-of-state convictions in subdivision (d)(2), there is no question that the legislative version of the three strikes law includes out-of-state convictions for purposes of determining whether someone is eligible for the third strike penalty.

In November 1994, the voters adopted Proposition 184, codified as section 1170.12. Section 1170.12, subdivision (b), is virtually identical to section 667, subdivision (d), in defining a "prior conviction of a felony" as: "(1) Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state"; "(2) A conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison [and] . . . includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7"; and "(3) [Certain] prior juvenile adjudication[s]." However, in delineating who is eligible for the third strike penalty, section 1170.12, subdivision (c)(2)(A) (subdivision (c)(2)(A)), refers to a defendant who has "two or more prior felony convictions, *as defined in paragraph (1) of subdivision (b)* . . . ." (Italics added.) Thus, defendant argues that unlike its legislative counterpart, subdivision (c)(2)(A) does not include out-of-state convictions because it does not expressly refer to section 1170.12, subdivision (b)(2).

The case before us involves crimes committed prior to November 1994. It thus arises under the legislative statute (§ 667, subds. (b)-(i)) rather than under the initiative statute (§ 1170.12). (*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 505 [53 Cal.Rptr.2d 789, 917 P.2d 628].) However, defendant asserts that because section 1170.12 is more lenient than section 667, subdivisions (b)-(i), in that it does not include defendant's out-of-state conviction as a third strike, he is entitled to the benefit of this reduced punishment under the principles of *In re Estrada* (1965) 63 Cal.2d 740, 745 [48 Cal.Rptr. 172, 408 P.2d 948]. We therefore proceed to consider whether subdivision (c)(2)(A) may be properly so construed.

■ In construing subdivision (c)(2)(A) to determine whether out-of-state convictions are included, "our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure." (*In re Littlefield* (1993) 5 Cal.4th 122, 130 [19 Cal.Rptr.2d 248, 851 P.2d 42].) If "the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

■ Read in the context of section 1170.12 as a whole, the language of subdivision (c)(2)(A) is ambiguous regarding the inclusion of out-of-state convictions in at least two respects. First, the phrase "prior felony convictions, as defined in paragraph (1) of subdivision (b)," could be interpreted, as

defendant suggests, to refer to the *forum* in which the prior conviction was obtained, i.e., an adult criminal proceeding in California. This interpretation would, of course, mean that out-of-state convictions, which are described in subdivision (b)(2), would not qualify for subdivision (c)(2)(A)'s third strike penalty.

Alternatively, the same phrase could be interpreted as highlighting the *nature* of the prior conviction, i.e., a violent or serious felony, that will qualify as a prior felony conviction in a three strikes case. Because section 1170.12, subdivision (b)(2), includes only those out-of-state convictions deemed violent or serious in California, interpreting subdivision (c)(2)(A) to refer to the nature of the former conviction would mean that out-of-state convictions would qualify for the subdivision's third strike penalty.

Second, section 1170.12, subdivision (b), provides: "Notwithstanding any other provision of law and for the purposes *of this section*, a prior conviction of a felony shall be defined as" including California convictions (§ 1170.12, subd. (b)(1)), out-of-state convictions (§ 1170.12, subd. (b)(2)), and juvenile adjudications (§ 1170.12, subd. (b)(3)). Subdivision (b) thus defines a prior conviction for the entire section broadly and without qualification to include out-of-state convictions and juvenile adjudications. As noted, however, subdivision (c)(2)(A) states that a defendant is eligible for the third strike penalty if he or she has sustained "two or more prior felony convictions, *as defined in paragraph (1) of subdivision (b)*." (Italics added.) Subdivision (c)(2)(A), therefore, arguably proffers a different and inconsistent definition to the extent it limits the definition of a prior felony for purposes of the three strikes provision to only adult California convictions. By concluding that subdivision (c)(2)(A)'s reference to subdivision (b)(1) simply identifies the nature of the conviction and not the rendering forum, this potential inconsistency in definition is avoided. Even if subdivision (c)(2)(A) could be construed as merely an exception to the more general definition of subdivision (b), there is still a tension between subdivision (b)'s unqualified language and the subsequent presence of such an exception in subdivision (c)(2)(A).

For these reasons, the statutory language is ambiguous regarding whether out-of-state convictions are included in subdivision (c)(2)(A). We therefore turn to the initiative's legislative history to determine which of these constructions best effectuates the voters' intent.

The initiative's history demonstrates an unequivocal intent on the part of the voters to adopt a sentencing scheme identical to the legislative version of

the three strikes law.[2] The legislative analyst described the initiative as follows: "This measure proposes amendments to state law that are *identical* to a law enacted by the Legislature and signed by the Governor in March 1994. Consequently, adoption or rejection of this initiative will have no direct impact on existing law because the measure reaffirms provisions of the law that are already in effect." (Ballot Pamp., analysis of Prop. 184 as presented to voters, Gen. Elec. (Nov. 8, 1994) p. 33, italics added.) The analysis twice reiterated that the initiative version "reaffirms" and is "identical" to the legislative version. (*Id.*, at pp. 32, 34.) The proponents of the initiative stated that its purpose was to "strengthen" the legislative version. (*Id.*, argument in favor of Prop. 184, Gen. Elec. (Nov. 8, 1994) p. 36.) Even the opponents of the initiative stated that "PROPOSITION 184 DOES NOT CHANGE THE LAW. [¶] This measure is *identical* to three strikes legislation already signed into law." (*Id.*, rebuttal to argument in favor of Prop. 184, Gen. Elec. (Nov. 8, 1994) p. 36, italics added.) In contrast, there is no evidence that the voters intended to change the legislative version, or in particular, adopt a more *lenient* three strikes law.

Moreover, in describing the initiative's third strike penalty, later codified in subdivision (c)(2)(A), the legislative analyst made no distinction between prior California and out-of-state convictions. Thus, the analyst stated, "Both measures [the legislative and initiative versions] require that a person who is convicted of a felony and who has been previously convicted of one or more violent or serious felonies, be sentenced as follows: [¶] . . . [¶] If the person has *two or more previous* serious or violent felony convictions, the mandatory sentence for *any new* felony conviction (not just a serious or violent felony) is life imprisonment with the minimum term being the *greater* of (1) three times the term otherwise required under law for the new felony conviction, (2) 25 years, or (3) the term determined by the court for the new conviction. [¶] . . . Both measures also require that specified crimes committed by a minor, who was at least age 16 at the time of the crime, count as a previous conviction. These specified crimes generally include the same crimes defined as serious and violent felonies. Prior to March 1994, crimes committed by minors and dealt with by the juvenile court did not count as previous felony convictions." (Ballot Pamp., analysis of Prop. 184, *supra*, p. 33, italics in original.) Likewise, the proponents of the initiative stated, "Felonies committed outside California, or by juveniles, are counted as strikes," drawing no distinction between the two strikes penalty of section 1170.12, subdivision (c)(1), and the three strikes penalty of subdivision (c)(2)(A). (*Id.*, argument in favor of Prop. 184, *supra*, p. 36.)

---

[2]We hereby grant the People's request for judicial notice of the initiative petition and ballot statement regarding Proposition 184. (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 504, fn. 1.)

Indeed, the legislative and initiative versions are identical in all other sentencing aspects. For example, the stated purpose of both the legislative and initiative versions is to "ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (Ballot Pamp., text of Prop. 184, *supra*, p. 64; § 667, subd. (b).) In addition, "When a defendant is convicted of a felony, and it is pleaded and proved that he has committed one or more prior felonies defined as 'violent' or 'serious,' sentencing proceeds under the Three Strikes law '[n]otwithstanding any other law.' (§ 667, subd. (c); § 1170.12, subd. (a).) Prior felonies qualifying as 'serious' or 'violent' are taken into account regardless of their age. (§ 667, subd. (c)(3); § 1170.12, subd. (a)(3).) The current felony need not be 'violent' or 'serious.' (§ 667, subd. (c); § 1170.12, subd. (a).) . . . Sentencing on all current offenses is generally consecutive (§ 667, subds. (c)(6)-(8); § 1170.12, subds. (a)(6)-(8)) without any aggregate term limitation (§ 667, subd. (c)(1); § 1170.12, subd. (a)(1)). In sentencing, the court may not grant probation, suspend execution or imposition of sentence (§ 667, subd. (c)(2); § 1170.12, subd. (a)(2)), divert the defendant, or commit the defendant to any facility other than state prison (§ 667, subd. (c)(4); § 1170.12, subd. (a)(4))." (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 505-506.)

Thus, the initiative, like the legislative version of the three strikes law: (1) specifically targets in its statement of purpose persons with prior serious and/or violent felony convictions without limiting the target group to California felons; (2) defines a prior felony conviction to include a foreign prior conviction "[n]otwithstanding any other provision of law and for the purposes of this section" (§ 1170.12, subd. (b)); (3) provides that a foreign prior felony conviction will trigger certain mandatory sentencing consequences (§ 1170.12, subd. (a)(1)-(8)); (4) mandates that "[n]otwithstanding any other provision of law," the provisions of section 1170.12 shall be applied in every case in which a defendant has a foreign prior felony conviction (§ 1170.12, subd. (d)(1)); and (5) provides that a foreign prior felony conviction qualifies as a strike in a two strikes case (§ 1170.12, subd. (c)(1)). Interpreting section 1170.12 to include foreign convictions when calculating the sentence in a three strikes case is consistent with this statutory scheme.

Accordingly, we see no evidence in the legislative history that the voters intended to exclude out-of-state convictions from the purview of the initiative's third strike penalty, or ameliorate the punitive effect of section 667, subdivisions (b)-(i). We therefore conclude that the language of subdivision (c)(2)(A), "two or more prior felony convictions, as defined in paragraph (1) of subdivision (b)," is most properly construed as referring to the nature of the prior felony conviction, i.e., violent or serious, not to the rendering

forum. Accordingly, an out-of-state conviction qualifies as a strike for purposes of subdivision (c)(2)(A)'s third strike penalty.

Defendant asserts "the voters may have been misled to believe that [the legislative version] makes the same distinction between in-state and out-of-state felonies that Proposition 184 makes. An error such as this would invite no departure from the explicit terms of the initiative." We find no evidence, however, that the voters understood that section 1170.12 *made* a distinction between in-state and out-of-state felonies. Thus there is no basis on which we may conclude that in describing the statutes as "identical," the ballot pamphlet misled the voters as to the provisions of section 667, subdivisions (b)-(i), not section 1170.12. In any event, we have concluded that the terms of the initiative are not "explicit" but ambiguous.

In addition, defendant attempts to argue that the federal and state due process rights of those who committed crimes after the passage of section 1170.12, but prior to our decision in this case, will be violated because subdivision (c)(2)(A) failed to give those persons notice that out-of-state convictions are included within its purview. Defendant does not raise this claim on his own behalf, perhaps recognizing that because his alleged offenses were committed prior to the effective date of section 1170.12, he cannot claim his right to notice was violated. ▮ Nor, however, given that constitutional rights are generally personal and no exception is applicable here, may defendant assert this claim on behalf of others. (Cf. *In re M.S.* (1995) 10 Cal.4th 698, 709 [42 Cal.Rptr.2d 355, 896 P.2d 1365]; *People* v. *Sipe* (1995) 36 Cal.App.4th 468, 480-481 [42 Cal.Rptr.2d 266].) Moreover, the mere fact that a new statute requires interpretation does not make it unconstitutionally vague.[3]

CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., and Chin, J., concurred.

MOSK, J.—I concur in the result that the majority reach, viz., affirmance of the judgment of the Court of Appeal.

But I concur *only* in the majority's result. I cannot join in their discussion, which, as will appear, is not only unnecessary but also unsound.

---

[3]By concluding that section 1170.12 is ambiguous and reasonably construed to include out-of-state convictions, we have further concluded that the relevant provisions of section 1170.12 and section 667, subdivisions (b)-(i) are consistent. Hence it is unnecessary to decide whether section 1170.12 repealed section 667, subdivisions (b)-(i).

I

This cause involves both of the two statutes popularly referred to as the "Three Strikes and You're Out" laws.

Penal Code section 667 was amended by the Legislature, effective March 7, 1994, to establish a sentencing scheme, in its subdivisions (b) through (i), for fixing the term of imprisonment for any person convicted of a felony who had previously been convicted of one or more specified felonies. (Stats. 1994, ch. 12, §§ 1-2.) This is the first "Three Strikes" law.

Subsequently, section 1170.12 was added to the Penal Code by the voters, effective November 9, 1994 (Cal. Const., art. II, § 10, subd. (a)), to establish a sentencing scheme for fixing the term of imprisonment for any person convicted of a felony who had previously been convicted of one or more specified felonies. (Initiative measure, Prop. 184, § 1, as approved by voters, Gen. Election (Nov. 8, 1994).) This is the second Three Strikes law.

In *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (hereafter sometimes *Romero*), we presented the "legislative history" of Penal Code sections 667 and 1170.12, as follows.

In its present form, Penal Code section 667 "began as Assembly Bill No. 971, which was introduced on March 1, 1993. (Assem. Bill No. 971 (1993-1994 Reg. Sess.).) As originally introduced, the bill would have added a new section 1170.12 to the Penal Code . . . . The bill failed in the Assembly Committee on Public Safety on April 20 of that year. A motion to reconsider was granted, but no further hearings on the bill would take place until 1994.

"Meanwhile, on October 7, 1993, a petition to add Proposition 184 to the ballot for the November 1994 General Election began to circulate for signatures. The initiative was loosely based on Assembly Bill No. 971 and likewise proposed to add a new section 1170.12 to the Penal Code. . . .

"On January 3, 1994, while Proposition 184 was circulating, the sponsors of Assembly Bill No. 971 amended it to conform to the language of the initiative, with [certain] exceptions. The bill underwent its only further significant amendment on January 13, when the proposal was made to codify its provisions as subdivisions (b) through (i) of [Penal Code] section 667, rather than as a new [Penal Code] section 1170.12. Both the Senate and the Assembly approved the bill on March 3, 1994. The Governor signed it on March 7. It took effect as an urgency measure the same day.

"March 7, 1994, was also the last day on which Proposition 184 could lawfully circulate for signatures. On April 6, 1994, the Secretary of State

certified the initiative for the ballot, and the voters approved it at the General Election on November 8, 1994. It took effect the next day, codified as [Penal Code] section 1170.12." (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at pp. 504-505.)

In *Romero*, we stated that Penal Code sections 667 and 1170.12 constitute "two . . . nearly identical statutory schemes . . . ." (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 504.)

Thus, under both sections 667 and 1170.12 of the Penal Code: "When a defendant is convicted of a felony, and it is pleaded and proved that he has committed one or more [specified] prior felonies . . . [,] sentencing proceeds . . . '[n]otwithstanding any other law' ([Pen. Code,]; § 667, subd. (c); § 1170.12, subd. (a).) Prior [qualifying] felonies . . . are taken into account regardless of their age. ([*Id.*,] § 667, subd. (c)(3); § 1170.12, subd. (a)(3).) The current felony need not be [qualifying]. ([*Id.*,] § 667, subd. (c); § 1170.12, subd. (a).) If the defendant has only one qualifying prior felony conviction, the prescribed term of imprisonment (or the minimum term if the current offense calls for an indeterminate sentence) is 'twice the term otherwise provided as punishment for the current felony conviction.' ([*Id.*,] § 667, subd. (e)(1); § 1170.12, subd. (c)(1).) If the defendant has two or more prior qualifying felonies, the prescribed sentence is 'an indeterminate term of life imprisonment . . . .' ([*Id.*,] § 667, subd. (e)(2)(A); § 1170.12, subd. (c)(2)(A).) Those defendants who are sentenced to life become eligible for parole on a date calculated by reference to a 'minimum term.' The 'minimum term' is the greater of: (a) three times the term otherwise provided for the current conviction; (b) twenty-five years; or (c) the term required by [Penal Code] section 1170 for the current conviction, including any enhancements (the Determinate Sentencing Act of 1976), the term required by [Penal Code] section 190 (concerning homicide), or the term required by [Penal Code] section 3046 (concerning life sentences). ([*Id.*,] § 667, subd. (e)(2)(A)(i)-(iii); § 1170.12, subd. (c)(2)(A)(i)-(iii).) Sentencing on all current offenses is generally consecutive ([*id.*,] § 667, subds. (c)(6)-(8); § 1170.12, subds. (a)(6)-(8)) without any aggregate term limitation ([*id.*,] § 667, subd. (c)(1); § 1170.12, subd. (a)(1)). In sentencing, the court may not grant probation, suspend execution or imposition of sentence ([*id.*,]; § 667, subd. (c)(2); § 1170.12, subd. (a)(2)), divert the defendant, or commit the defendant to any facility other than state prison ([*id.*,] § 667, subd. (c)(4); § 1170.12, subd. (a)(4))." (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at pp. 505-506.)

Although "*nearly* identical" (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 504, italics added), Penal Code sections 667 and 1170.12 are not totally so.

Thus—as will turn out to be pertinent here—under Penal Code section 667, *both* insofar as it requires imprisonment for twice the otherwise applicable term when there is only one specified prior felony conviction, *and also* insofar as it requires imprisonment for life when there are two or more, a qualifying prior felony conviction includes, through its subdivision (e), all three of the following: "(1) Any offense defined in subdivision (c) of [Penal Code] Section 667.5 as a violent felony or any offense defined in subdivision (c) of [Penal Code] Section 1192.7 as a serious felony in this state. . . ." (Pen. Code, § 667, subd. (d)(1).) "(2) A conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined" as a California "violent" or "serious" felony. (*Id.*, § 667, subd. (d)(2).) "(3) A prior juvenile adjudication" in particular circumstances. (*Id.*, § 667, subd. (d)(3).)

Under Penal Code section 1170.12, by contrast, matters are different.

It is true that, insofar as Penal Code section 1170.12 requires imprisonment for twice the otherwise applicable term when there is only one specified prior felony conviction, a qualifying prior felony conviction includes, through its subdivision (c)(1), all three of the following: "(1) Any offense defined in subdivision (c) of [Penal Code] Section 667.5 as a violent felony or any offense defined in subdivision (c) of [Penal Code] Section 1192.7 as a serious felony in this state. . . ." (Pen. Code, § 1170.12, subd. (b)(1).) "(2) A conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined" as a California "violent" or "serious" felony. (*Id.*, § 1170.12, subd. (b)(2).) "(3) A prior juvenile adjudication" in particular circumstances. (*Id.*, § 1170.12, subd. (b)(3).)

But, insofar as Penal Code section 1170.12 requires imprisonment for life when there are two or more specified prior felony convictions, a qualifying prior felony conviction is limited, through its subdivision (c)(2)(A), to *only* such "as [is] defined in paragraph (1) of [its] subdivision (b)," viz., "[a]ny offense defined in subdivision (c) of [Penal Code] Section 667.5 as a violent felony or any offense defined in subdivision (c) of [Penal Code] Section 1192.7 as a serious felony in this state" (*id.*, § 1170.12, subd. (b)(1)).

## II

Defendant was charged by complaint before a magistrate with various felonies committed on May 18, 1994—after Penal Code section 667 became

effective, but before Penal Code section 1170.12 was enacted. For imprisonment for twice the otherwise applicable term, he was alleged under Penal Code section 667 to have previously been convicted of the "serious" California felony of burglary of an inhabited dwelling house.

Subsequently, defendant was charged by separate complaint before another magistrate with various felonies committed on June 2 and July 3, 1994—again after the effective date of Penal Code section 667 but before the enactment of Penal Code section 1170.12. For life imprisonment, he was alleged under Penal Code section 667 to have previously been convicted of the "serious" California felony of burglary of an inhabited dwelling house, which is referred to above, and also a Nevada felony of attempted rape. Later, he was charged by an amended complaint with an additional felony committed on August 2, 1994.

After Penal Code section 1170.12 was enacted and became effective, and after the causes were consolidated, the assigned magistrate struck the allegation of defendant's Nevada attempted rape felony conviction to the extent that, if proved, it would require imprisonment for life under Penal Code section 667. Evidently persuaded by an argument that defendant had made in reliance on authorities including *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (hereafter sometimes *Estrada*), the magistrate appears to have reasoned to this effect: Penal Code section 1170.12 "amends" Penal Code section 667; for life imprisonment, Penal Code section 667 allows two or more specified prior felony convictions in any of the three indicated forms of "violent" and/or "serious" California felonies, certain out-of-state felonies, and particular juvenile adjudications, whereas Penal Code section 1170.12 demands such convictions only in the single form of "violent" and/or "serious" California felonies; because Penal Code section 1170.12 "mitigates punishment" imposed by Penal Code section 667 by limiting its availability, and because Penal Code section 1170.12 does not contain a savings clause for Penal Code section 667, Penal Code section 1170.12 should be applied retroactively before its effective date in any pending cause, such as the present, arising under Penal Code section 667.

The superior court proceeded to deny a motion by the People to compel the magistrate to reinstate the allegation of defendant's Nevada attempted rape felony conviction for all purposes, including requiring imprisonment for life under Penal Code section 667, and issued an order accordingly.

On the People's appeal in each of the consolidated causes, the Court of Appeal, having consolidated the matters, reversed the superior court's order. Engaging in statutory construction, it concluded that, insofar as it requires

imprisonment for life, Penal Code section 1170.12 allows two or more prior felony convictions in any of the three indicated forms, expressly as to "violent" and/or "serious" California felonies, and impliedly as to both certain out-of-state felonies and particular juvenile adjudications.

## III

In my view, the Court of Appeal was right to reverse the superior court's order denying the People's motion to compel the magistrate to reinstate the allegation of defendant's Nevada attempted rape felony conviction for all purposes, including requiring imprisonment for life under Penal Code section 667.

This does not mean that the Court of Appeal was sound in its efforts to construe Penal Code section 1170.12 to allow, for life imprisonment, two or more specified prior felony convictions in any of the three indicated forms of "violent" and/or "serious" California felonies, certain out-of-state felonies, and particular juvenile adjudications. It was not.

The Court of Appeal stumbled over the very words of Penal Code section 1170.12, which allow, for life imprisonment, two or more specified prior felony convictions *only* "as defined in paragraph (1) of [its] subdivision (b)" (Pen. Code, § 1170.12, subd. (c)(2)(A)), which means *only* as "defined in subdivision (c) of [Penal Code] Section 667.5 as a violent felony or . . . in subdivision (c) of [Penal Code] Section 1192.7 as a serious felony in this state" (*id.*, § 1170.12, subd. (b)(1)). To read the quoted language in accordance with its sense causes no problem. Certainly, the exclusion of juvenile adjudications is not irrational: generally, the underlying proceedings are deemed not to be criminal in nature (Welf. & Inst. Code, § 203). Neither is the exclusion of out-of-state felonies irrational: California felonies may evidence a greater threat to this state, and hence may justify greater deterrence, than those elsewhere (see *People* v. *McCarthy* (1986) 176 Cal.App.3d 593, 596 [222 Cal.Rptr. 291]; *People* v. *Hernandez* (1979) 100 Cal.App.3d 637, 645 [160 Cal.Rptr. 607]). But to read the quoted language against its sense to impliedly include certain out-of-state felonies and particular juvenile adjudications as well would yield the untenable result of negating its express limitation as to "violent" and/or "serious" California felonies.

Although the Court of Appeal's reasoning was wrong, its result was not.

At the first step, we must accept as undisputed and indisputable that, insofar as it requires imprisonment for life, Penal Code section 667 allows two or more specified prior felony convictions in any of the three indicated

forms of "violent" and/or "serious" California felonies, certain out-of-state felonies, and particular juvenile adjudications.

At the second step, we may at least assume what appears to be plain, namely, that, insofar as it requires imprisonment for life, Penal Code section 1170.12 demands two or more specified prior felony convictions only in the single form of "violent" and/or "serious" California felonies.

At the third step, we find—perhaps surprisingly—that, although later enacted, Penal Code section 1170.12 does *not* displace Penal Code section 667. The reason is this: Penal Code section 1170.12 expressly permits other sentencing laws—such as Penal Code section 667—to operate, as it were, in supplementary fashion. Both insofar as it requires imprisonment for twice the otherwise applicable term when there is only one specified prior felony conviction, and also insofar as it requires imprisonment for life when there are two or more, Penal Code section 1170.12 declares itself to "apply" not exclusively, but rather "*in addition to* any other enhancements or punishment provisions which may apply" (Pen. Code, § 1170.12, subd. (c), italics added)—including those of Penal Code section 667.

It is true that, to a certain extent, Penal Code section 1170.12 does indeed displace other laws. But it does not do so with regard to Penal Code section 667, at least not in any aspect pertinent here.

Thus, in its subdivision (a), Penal Code section 1170.12 states: "Notwithstanding any other provision of law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions, as defined in subdivision (b), the court shall adhere to each of" certain mandates, which broadly prohibit limitation or reduction of a term of imprisonment. In so doing, Penal Code section 1170.12 displaces other laws, but only insofar as they would limit or reduce a term of imprisonment. Penal Code section 667 does not have such an effect. Rather, it extends and increases punishment by allowing two or more specified prior felony convictions in any of the three indicated forms as predicates for life imprisonment.

Also, in its subdivision (b), Penal Code section 1170.12 states: "Notwithstanding any other provision of law and for the purposes of this section, a prior conviction of a felony shall be defined as" indicated above. In so doing, Penal Code section 1170.12 displaces other laws, but only insofar as they would add to, or take away from, its own definition of a "prior conviction of a felony" for its own "purposes." Penal Code section 667 does not have such an effect. It does indeed contain *its own* definition of a "prior

conviction of a felony," but does so only for *its own* "purposes." (Pen. Code, § 667, subd. (d).)

Similarly, in its subdivision (d)(1), Penal Code section 1170.12 states: "Notwithstanding any other provision of law, this section shall be applied in every case in which a defendant has a prior felony conviction as defined in this section. . . ." In so doing, Penal Code section 1170.12 displaces other laws, but only insofar as they would render it inapplicable within its own sphere. Penal Code section 667 does not have such an effect. Indeed, it expressly permits other sentencing laws—such as Penal Code section 1170.12—to operate in supplementary fashion. Both insofar as it requires imprisonment for twice the otherwise applicable term when there is only one specified prior felony conviction, and also insofar as it requires imprisonment for life when there are two or more, Penal Code section 667 declares itself to "apply" not exclusively, but rather "*in addition to* any other enhancement or punishment provisions which may apply" (Pen. Code, § 667, subd. (e), italics added)—including those of Penal Code section 1170.12. This point deserves emphasis: Penal Code section 1170.12 expressly states that *it* "shall be applied" (*id.*, § 1170.12, subd. (d)(1)); it does not even impliedly suggest that *other laws* may not be.

Having said all that, I need add little to dispose of what may be called the "*Estrada* argument." It was urged by defendant before the magistrate, and proved to be successful. It is urged again here, but must meet with a different fate.

Under *Estrada*, the threshold question is whether Penal Code section 1170.12 "amend[s]" Penal Code section 667. (*In re Estrada, supra,* 63 Cal.2d at p. 742.) The answer is no. Indeed, Penal Code section 1170.12 does not even purport to amend Penal Code section 667. It could not be otherwise. When Proposition 184, which would add section 1170.12 to the Penal Code, was drafted, Assembly Bill No. 971, which would amend Penal Code section 667 into its present form, had not yet been enacted.

Next, under *Estrada*, the substantive question is whether Penal Code section 1170.12 "mitigates punishment" imposed by Penal Code section 667. (*In re Estrada, supra,* 63 Cal.2d at p. 748.) The answer is no. As shown, Penal Code section 1170.12 itself imposes punishment, and expressly permits other sentencing laws like Penal Code section 667 to impose punishment "in addition." (Pen. Code, § 1170.12, subd. (c).)[1]

---

[1]A question that need not be answered in this cause presents itself on the face of Penal Code section 667 and Penal Code section 1170.12. Both subdivision (d)(2) of Penal Code

## IV

Much like the Court of Appeal, the majority have made efforts to construe Penal Code section 1170.12 to allow, for life imprisonment, two or more specified prior felony convictions in any of the three indicated forms of "violent" and/or "serious" California felonies, certain out-of-state felonies, and particular juvenile adjudications.

In light of the analysis presented above, it is plain that the majority's discussion is unnecessary. It matters not whether, for life imprisonment, the later-enacted Penal Code section 1170.12, like the earlier-enacted Penal Code section 667, allows two or more specified prior felony convictions in any of the three indicated forms. That is because Penal Code section 1170.12 permits the operation of Penal Code section 667, which itself so allows.

Furthermore, in light of the analysis presented below, it will become plain that the majority's discussion is not only unnecessary, but also unsound.

It is common ground that, in "undertak[ing] to construe a statute," "courts . . . 'ask only what the statute means.' (Holmes, Collected Legal Papers (1920) p. 207.) And when they consider that question, they ask only what *its words* mean. For a statute, as it were, is a complete integration. Within its scope, it is the final and exclusive statement by the legislative body of its intent, superseding all prior and contemporaneous expressions and implications, not only those that are directly contrary but even those that are altogether consistent. Perhaps more accurately, it is the legislative body's final and exclusive *enactment*, displacing all terms and conditions of whatever sort that could, would, or might have been passed. To seek the meaning of a statute is not simply to look up dictionary definitions and then stitch together the results. Rather, it is to discern the sense of the statute, and therefore its words, in the legal and broader culture. Obviously, a statute has no meaning apart from its words. Similarly, its words have no meaning apart from the world in which they are spoken." (*Kopp* v. *Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 672-673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Mosk, J.), first italics added, other italics omitted; cf. *San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 580 [7

---

section 667 and subdivision (b)(2) of Penal Code section 1170.12 define a "prior conviction of a felony" as, inter alia, a "conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined" as a California "violent" or "serious" felony. It is clear that a "prior conviction of a felony" embraces a prior conviction of a non-California felony *with all the elements of a California "serious" or "violent" felony.* But it is unclear whether it extends further.

Cal.Rptr.2d 245, 828 P.2d 147] [to similar effect as to an initiative constitutional amendment]; *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 802-803 [268 Cal.Rptr. 753, 789 P.2d 934] [same: legislative constitutional amendment]; *Carman* v. *Alvord* (1982) 31 Cal.3d 318, 330-331 [182 Cal.Rptr. 506, 644 P.2d 192] [same: initiative constitutional amendment].)

At the threshold, the majority claim to discern ambiguity in Penal Code section 1170.12. There is only univocal clarity.

To repeat: Insofar as it requires imprisonment for life when there are two or more specified prior felony convictions, Penal Code section 1170.12 limits a qualifying prior felony through its subdivision (c)(2)(A) to *only* such "as [is] defined in paragraph (1) of [its] subdivision (b)," viz., "[a]ny offense defined in subdivision (c) of [Penal Code] Section 667.5 as a violent felony or any offense defined in subdivision (c) of [Penal Code] Section 1192.7 as a serious felony in this state" (*id.*, § 1170.12, subd. (b)(1)).

The majority concede that the quoted language can indeed be read in accordance with its sense to require, for life imprisonment, two or more specified prior felony convictions only in the single form of "violent" and/or "serious" California felonies. In this regard, they do no more than they must.

But the majority then go on to assert that the quoted language can also be read to allow, for life imprisonment, two or more specified prior felony convictions in the form of certain out-of-state felonies and, apparently, particular juvenile adjudications as well.

In support, the majority first state that the express limitation to "violent" and/or "serious" California felonies in subdivision (c)(2)(A) of Penal Code section 1170.12 may somehow be without limitation to all offenses of that "nature" (maj. opn., *ante*, at p. 106, italics omitted), including out-of-state felonies and, apparently, juvenile adjudications. The words simply cannot shoulder the weight they are asked to bear. The express limitation to a single form alone cannot reasonably be transmogrified into an implied embracing of all three forms together. If Latin is needed, it is available: *Expressio unius, exclusio alterum.*[2]

The majority next state that the express limitation to "violent" and/or "serious" California felonies in subdivision (c)(2)(A) of Penal Code section 1170.12 may be "inconsistent" (maj. opn., *ante*, at p. 106) with the definition

---

[2]The majority state: "[Penal Code] section 1170.12, subdivision (b)(2), includes *only* those out-of-state convictions deemed violent or serious in California . . . ." (Maj. opn., *ante*, at p. 106, italics added.) Easier to assert than to prove. (See fn. 1, *ante*.)

of a qualifying prior felony conviction, which includes certain out-of-state felonies and particular juvenile adjudications as well. It is not. It merely limits the kind that can serve as a predicate for life imprisonment. As explained above, such a limitation is not irrational.

Looking to extrinsic materials relating to Proposition 184 in the ballot pamphlet—and somehow overlooking Penal Code section 1170.12 itself, which is set out therein in its entirety—the majority claim to discover an intent on the part of the voters, in enacting Penal Code section 1170.12, to enact a provision identical to Penal Code section 667. As will appear, any such aim would be of no consequence.

Under the circumstances, it seems improper to seek the voters' intent as to Penal Code section 1170.12 in the extrinsic materials. As explained above, the final and exclusive statement of such intent is the statute itself. In pertinent part, that statement is this: For life imprisonment, Penal Code section 1170.12 demands two or more specified prior felony convictions only in the single form of "violent" and/or "serious" California felonies. The extrinsic materials are, by definition, extrinsic to the statute. In some parts, they may provide neutral descriptions. In other parts, they may offer tendentious characterizations. In no part, however, are they the statute itself.

Even if one were to seek the voters' intent as to Penal Code section 1170.12 in the extrinsic materials, he would find nothing to vary the meaning of the statute's words. Let us assume for argument's sake that, in enacting Penal Code section 1170.12, the voters had in fact intended to enact a provision identical to Penal Code section 667. From this assumption, what follows? *First and last, of course, that they intended to enact Penal Code section 1170.12—which demands, for life imprisonment, two or more specified prior felony convictions only in the single form of "violent" and/or "serious" California felonies.* It is true that they had been led to believe—erroneously—that Penal Code section 1170.12 was identical to Penal Code section 667 and, consequently, that Penal Code section 667 was identical to Penal Code section 1170.12. But they must necessarily have inferred—again, erroneously—that Penal Code section 667 made the same demand as Penal Code section 1170.12. They surely had no reason to do otherwise. In the ballot pamphlet, they had been given Penal Code section 1170.12 itself, which makes the demand; they had not been given Penal Code section 667, which does not.

## V

For the reasons stated above, I join in affirming the judgment of the Court of Appeal.

Werdegar, J., concurred.

**KENNARD, J.,** Concurring.—In March 1994, the Legislature amended Penal Code section 667[1] to add subdivisions (b) through (i), thereby enacting what is popularly known as the "Three Strikes and You're Out" law (hereafter also referred to as the Legislature's Three Strikes law). In November 1994, the voters, by initiative, enacted section 1170.12 (hereafter also referred to as the Three Strikes initiative). Although there is a close resemblance between the two, they are not identical.

Both laws have a "Two Strikes" provision doubling the sentence of a defendant who is convicted of a felony and has one prior conviction for a felony that qualifies as a "strike." Under both laws, a prior conviction is a "strike" under the Two Strikes provision if it falls within one of these three categories: (1) a California adult conviction for specified violent or serious felonies, (2) a conviction in another state for a crime having the same elements as the California crimes just mentioned (hereafter referred to as an out-of-state conviction), or (3) an adjudication that a juvenile has committed any of the specified violent or serious felonies.

Both laws also have a Three Strikes provision stating that a defendant convicted of a felony who has two qualifying prior convictions or "strikes" shall be sentenced to a term of no less than 25 years to life in prison. They differ in this respect: Under the Legislature's version (section 667), prior convictions under the Three Strikes provision must fall within one of the three categories pertaining to the Two Strikes provision I described in the preceding paragraph. But under the initiative (section 1170.12), a prior conviction qualifies as a third strike only if it falls within the first of these three categories: that is, a California adult conviction for specified violent or serious felonies.

The majority finds ambiguity in the language of the Three Strikes initiative, section 1170.12, and construes it to permit the prosecution in *Three* Strikes cases to use a defendant's prior convictions whenever they fall within one of the three categories pertaining to the *Two* Strikes provision. Justice Mosk disagrees, expressing the view that the initiative explicitly bars the use of out-of-state convictions and juvenile adjudications as qualifying prior convictions in Three Strikes cases. He concludes, however, that the initiative did not repeal the Legislature's Three Strikes law, embodied in subdivisions (b) through (i) of section 667, and that in Three Strikes cases the prosecution may properly allege out-of-state convictions and juvenile adjudications as qualifying prior convictions under section 667.

---

[1]All subsequent statutory references are to the Penal Code.

I see no need to consider whether the majority has correctly construed the Three Strikes initiative. (§ 1170.12.) For, like Justice Mosk, I am of the view that the initiative has not repealed the Legislature's version of the Three Strikes law, which expressly permits the prosecution to allege out-of-state convictions as qualifying prior convictions in Three Strikes cases. Because here defendant was charged under the Legislature's version of the Three Strikes law, the trial court should not have barred the prosecution from alleging defendant's out-of-state conviction as a "strike."

## I

This is an appeal of two consolidated cases arising in Contra Costa County, both involving the same defendant.

In case No. 095979-1 in the Walnut Creek Judicial District (the Walnut Creek case), defendant was charged with three counts of robbery. The complaint alleged two prior felony convictions under section 667 (the Legislature's Three Strikes law): a California conviction for residential burglary and a Nevada conviction for attempted rape. In case No. 090239-5 in the Delta Judicial District (the Delta case), defendant was charged with two counts of robbery (different robberies from those charged in the Walnut Creek case), two counts of false imprisonment, two counts of assault with a deadly weapon, and one count of felon in possession of a firearm. The complaint alleged only one "strike," also under section 667: the California burglary conviction also alleged in the Walnut Creek case.

The two cases were consolidated. Judge Richard S. Flier, sitting as a municipal court magistrate, struck the Nevada conviction for attempted rape from the complaint in the Walnut Creek case and barred its use in the Delta case, ruling that it could not be used in a Three Strikes prosecution. The magistrate apparently reasoned that the Three Strikes initiative, which was enacted by the People in November 1994, had superseded or repealed the Legislature's Three Strikes law, which was enacted in March 1994, and that therefore the prosecution could not allege out-of-state convictions (such as defendant's Nevada conviction) in Three Strikes cases.

The prosecution then moved in superior court to "reinstate" the Nevada conviction in both the Walnut Creek case and the Delta case. (§ 871.5.) Judge Flier, this time sitting as a superior court judge, reviewed his own ruling and denied the reinstatement motion. On the prosecution's appeal (§ 1238, subd. (a)(9)), the Court of Appeal reversed, holding that the Three Strikes initiative did not preclude the prosecution from using a defendant's out-of-state convictions as qualifying prior convictions in Three Strikes cases.

## II

The complaints filed by the prosecution in this case allege that defendant's sentence should be enhanced under the Legislature's version of the Three Strikes law, embodied in subdivisions (b) through (i) of section 667, rather than the electorate's Three Strikes initiative, which appears in section 1170.12 and was voted into law after the Legislature's enactment of the Three Strikes law. It is undisputed that under the Legislature's Three Strikes law, the prosecution may use a defendant's previous out-of-state convictions and juvenile adjudications as qualifying prior convictions in Three Strikes cases. Thus, unless the initiative has repealed the Legislature's version of the Three Strikes law, the prosecution may continue to charge a defendant under the latter law, which expressly includes out-of-state felony convictions as qualifying prior convictions for Three Strikes purposes.

Repeal of one statute by another may be either express or implied. Because the voters' Three Strikes initiative makes no mention of the Legislature's version of the law, it does not expressly repeal it. Therefore, repeal, if any, must be by implication.

The governing principles in determining whether a statute repeals another by implication are well established. "[T]he law shuns repeals by implication, . . ." (*Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 868 [167 Cal.Rptr. 820, 616 P.2d 802].) "The presumption against implied repeal is so strong that, 'To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' . . . Courts have also noted that implied repeal should not be found unless '. . . the later provision gives *undebatable evidence* of an intent to supersede the earlier . . . .' " (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 419-420 [261 Cal.Rptr. 384, 777 P.2d 157], italics in original.)

Defendant argues that the two versions of the Three Strikes law, the Legislature's and the voters', "cannot have concurrent operation." He points to this language in the initiative: "Notwithstanding any other provision of law, this section shall be applied in every case in which a defendant has a prior felony conviction as defined in this section." (§ 1170.12, subd. (d)(1).)[2] He argues that this provision precludes the concurrent operation of the Legislature's Three Strikes law and the voters' Three Strikes initiative, and that the Legislature's version, which was enacted first, must therefore be superseded by the initiative.

---

[2]The Legislature's Three Strikes law contains similar language. (§ 667, subd. (f)(1).)

To determine whether an initiative has repealed existing legislation, "the intent of the drafters may be considered by the court if there is reason to believe that the electorate was aware of that intent [citation] and we have often presumed, in the absence of other indicia of the voters' intent such as ballot arguments [citation] or contrary evidence, that the drafters' intent and understanding of the measure was shared by the electorate." (*Rossi* v. *Brown* (1995) 9 Cal.4th 688, 700, fn. 7 [38 Cal.Rptr.2d 363, 889 P.2d 557].) Here, it is unlikely that the drafters of the Three Strikes initiative intended to override the Legislature's Three Strikes law, for when the Three Strikes initiative was drafted, the Legislature's version of the law had not yet been enacted and therefore did not exist. As this court explained in *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 504-505 [53 Cal.Rptr.2d 789, 917 P.2d 628], the voters' petition to add Proposition 184 (the Three Strikes initiative) to the ballot for the November 1994 General Election began to circulate on October 7, 1993. Five months later, in March 1994, the bill to amend section 667 to add subdivisions (b) through (i) (the Legislature's Three Strikes law) was approved by both the Assembly and the Senate and signed by the Governor. It is reasonable to infer that when the drafters of the Three Strikes initiative included the provision that section 1170.12 would apply "[n]otwithstanding any other provision of law," they intended to refer to provisions of law in effect *when the Three Strikes initiative was drafted*, at which time the Legislature had not yet enacted section 667, subdivisions (b) through (i).

It is equally reasonable to infer that in voting for the Three Strikes initiative in November 1994, the electorate did not believe that the initiative, by its use of the phrase "notwithstanding any other provision of law," would abrogate the Legislature's March 1994 enactment of the Three Strikes law. The Legislative Analyst, in summarizing the fiscal impact of the voters' Three Strikes initiative for the ballot pamphlet, said that the initiative "*reaffirms* the March 1994 changes." (Ballot Pamp., summary of Prop. 184 as presented to voters, Gen. Elec. (Nov. 8, 1994) p. 32, italics added.) In a more detailed analysis of the initiative, also contained in the ballot pamphlet, the Legislative Analyst stated that the voters' Three Strikes initiative "proposes amendments to state law that are identical to a law enacted by the Legislature and signed by the Governor in March 1994. Consequently, adoption or rejection of this initiative will have no direct impact on existing law because the measure *reaffirms provisions of the law that are already in effect*." (*Id.*, analysis of Prop. 184 by Legis. Analyst, Gen. Elec. (Nov. 8, 1994) p. 33; italics added.)

Similarly, both the arguments for and against the voters' Three Strikes initiative in the ballot pamphlet reflected the view that the initiative did not

repeat the Legislature's Three Strikes law. Proponents of the initiative claimed that politicians were trying to "weaken" the Legislature's Three Strikes law; a vote for the initiative, they contended, would "tell politicians, 'hands off 3 Strikes.' " (Ballot Pamp., argument in favor of Prop. 184, Gen. Elec. (Nov. 8, 1994) p. 36.) And opponents of the initiative said its effect would be to "endorse," not to repeal, the Legislature's Three Strikes law: "This measure is identical to three strikes legislation already signed into law. Don't endorse a bad and unworkable law." (*Id.*, rebuttal to argument in favor of Prop. 184, Gen. Elec. (Nov. 8, 1994) p. 36.)

Thus, through the ballot pamphlet, proponents and opponents of the Three Strikes initiative, as well as the neutral Legislative Analyst, told the voters that the initiative would not repeal the Three Strikes law that the Legislature had enacted in March 1994. It is therefore reasonable to assume that the voters, when they cast their votes for the Three Strikes initiative, did so with the intent not to repeal the law. (See *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 740, fn. 14 [248 Cal.Rptr. 115, 755 P.2d 299] ["The rule that the ballot pamphlet is an important aid in determining the intent of the voters . . . is too well settled to require extensive citation of authority."].)

For these reasons, I see no "undebatable evidence" (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist., supra,* 49 Cal.3d at p. 420) that the voters intended the words "[n]otwithstanding any other provision of law," as used in the Three Strikes initiative (§ 1170.12), to supersede or repeal the Legislature's Three Strikes law (§ 667, subds. (b)-(i)), which therefore is still in effect.

CONCLUSION

In this case, the prosecution charged defendant with two enhancements under the Legislature's version of the Three Strikes law. (§ 667, subds. (b)-(i).) Because that law was not repealed by the voters' subsequent passage of the Three Strikes initiative (§ 1170.12), and because it is undisputed that under that law (§ 667, subds. (b)-(i)), the prosecution may allege out-of-state convictions as qualifying prior conviction in Three Strikes cases, the trial court in this case was wrong when it ruled that the prosecution was precluded from doing so.

The Court of Appeal directed the trial court to reinstate defendant's alleged prior Nevada conviction for attempted rape, reasoning that under the voters' Three Strikes initiative (§ 1170.12) the prosecution could use out-of-state convictions as qualifying prior convictions in Three Strikes cases.

Although, as I have explained, I do not adopt the Court of Appeal's reasoning, I agree with its result. On this basis, I join the majority's affirmance of the judgment of the Court of Appeal.

Respondent's petition for a rehearing was denied January 28, 1997.