WERDEGAR, J., Concurring.
I agree with the majority’s conclusion that a criminal defendant given an indeterminate sentence pursuant to the “Three Strikes” law (Pen. Code,[1] §§ 667, subds. (b)-(i), 1170.12) is not statutorily authorized to earn any credit to reduce his or her term while serving that sentence. As the majority explains, when the Three Strikes law addresses the issue of credits, it refers to “credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3” (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)) which, in turn, refers to Penal Code sections that affect determinate sentences only. Because defendant received an indeterminate sentence, it appears no credit is authorized.
Although I join in the majority’s resolution of the question, I do so only because I view it as the best of two unsatisfactory options; I do not share the majority’s confidence that in fact we have accurately ascertained the lawmakers’ true intent. By many accounts, defendant is correct that the framers of the Three Strikes law, whether the Legislature (§ 667, subds. (b)-(i)) or the electorate (§ 1170.12), anticipated or assumed inmates like defendant would be entitled to earn credit to reduce the minimum term of their indeterminate Three Strikes sentence, subject only to two limitations: they could reduce their sentence by no more than a total of 20 percent (i.e., “one-fifth of the total term of imprisonment”) (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)), and they could not begin earning credits until physically residing in prison (ibid.).
For example, for the third reading of Assembly Bill No. 971 (1993-1994 Reg. Sess.), which would eventually become the legislative version of the Three Strikes law, a memorandum containing a revised analysis of the bill was prepared for the Senate Rules Committee. In its digest of the bill, the memorandum noted: “This bill provides that: [f] . . . [IQ 2. A person who *1084 has been convicted of one or more prior serious or violent felonies be limited to good-time/work-time credits not to exceed one-fifth of the total term of imprisonment imposed, for any new felony.” (Off. of Sen. Floor Analyses, Rep. to Sen. Rules Com. on Assem. Bill No. 971 (1993-1994 Reg. Sess.) Mar. 2, 1994, p. 1, italics added.) In the analysis portion, speaking of third strike offenders, the memorandum stated: “This bill would provide that a person sentenced under the provisions of this bill . . . may only receive sentence credits limited to a maximum of one-fifth the total sentence, allowing for release from prison in not less than 20 years.” (Id. at p. 2, italics added.) The italicized phrases suggest that, at the time the bill was being considered, lawmakers understood that third strike offenders could earn up to 20 percent credit, thereby reducing their minimum terms from 25 years to 20 years.
The historical evidence that lawmakers assumed third strike offenders could earn some credit is even stronger for the initiative version of the Three Strikes law. The analysis by the Legislative Analyst that prefaced the description of Proposition 184 in the ballot pamphlet provided that “a person who has been convicted previously of one or more serious or violent felonies may not earn credits to reduce the time he or she spends in prison for the new offense, by more than one-fifth (rather than the previous maximum of one-half) . . . .” (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) analysis of Prop. 184 by Legis. Analyst, p. 33.) The Legislative Analyst thus appears to have assumed the typical third strike offender would be able to earn credit to reduce his or her minimum sentence by up to 20 percent. (See People v. Birkett (1999) 21 Cal.4th 226, 243-244 [87 Cal.Rptr.2d 205, 980 P.2d 912] [reliance on statement by Legislative Analyst to determine meaning of initiative measure is proper].)
Similarly, in the argument in favor of Proposition 184, the proponents (including Mike Reynolds) asserted: “A ‘truth in sentencing’ provision requires felons to serve at least 80% of their terms for second and third strike convictions.“ (Ballot Pamp., Gen. Elec., supra, argument in favor of Prop. 184, p. 36, italics added; see Horwich v. Superior Court (1999) 21 Cal.4th 272, 277-280 [87 Cal.Rptr.2d 222, 980 P.2d 927] [reliance on arguments in ballot pamphlet to determine meaning of initiative measure is proper].) The proponents of the Three Strikes law thus expressed an understanding that third strike offenders would earn credit and never suggested that for third strike offenders the “one-fifth” limitation on credit meant one-fifth of nothing.
That the lawmakers behind both the legislative and initiative versions of the Three Strikes law assumed a typical third strike offender could reduce *1085 his or her minimum term by 20 percent thus seems fairly clear, despite the fact that a 25-year-to-life prison term is an indeterminate, not a determinate, term. Considered against the background of the law as it existed at the time, that assumption was reasonable. At the time the Three Strikes law was enacted in 1994, the credit provisions of sections 2931 and 2933 applied to virtually every crime that carried a penalty of an indeterminate term. Although the prescribed terms of imprisonment for these crimes were not determinate, most had statutorily mandated minimum terms that were determinate. For example, in 1994, section 190, which governs sentencing for murder, provided that “Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term of 15, 20, or 25 years in the state prison imposed pursuant to this section.” (§ 190, subd. (a), as amended by Stats. 1993, ch. 609, § 3, p. 3266, italics added.)[2]
In addition, individual statutes authorized credits against indeterminate terms. For example, section 217.1, subdivision (b), then (in 1994) as now, provided an indeterminate term of 15 years to life for attempting to murder certain public officials, but specifically allowed for earning credit against the minimum term. The same scheme applied, both in 1994 and now, to convictions for lewd or lascivious conduct where the offender had suffered prior convictions for certain sex crimes (§ 667.51, subd. (d) [15-year-to-life term, credits specifically allowed]). The two- and three-strike sex crime statute (§ 667.61) imposes terms of 15 and 25 years to life, respectively, and both terms may be reduced by earning credit, although credits are limited to 15 percent (§ 667.61, subd. (j)). Other examples exist, but these are illustrative. Viewed in context with these laws governing indeterminate terms, lawmakers could reasonably have assumed the new law would permit a third strike offender to reduce his or her minimum term by 20 percent under the new law, despite the fact the overall sentence was an indeterminate one.
The wording of the Three Strikes law also bolsters defendant’s side of the argument. Section 667, subdivision (c)(5) and section 1170.12, subdivision (a)(5) both provide: “The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not exceed one-fifth of the total term of imprisonment imposed and shall not accrue until the defendant is physically placed in the state prison.” If this statutory language, with its cross-reference to sections 2931 and 2933, means third strike offenders are prohibited from earning any credit at all, it seems an exceedingly odd way to say so. A reasonable alternative interpretation of the credit-limiting language in section 667, subdivision (c)(5) and *1086 section 1170.12, subdivision (a)(5) is that a third strike offender can earn credit, but that such credit is simply limited to 20 percent. If no credit were available at all, what would be the need to limit the overall amount? (One might also ask why—if third strike offenders are entitled to no credit anyway—prohibiting such inmates from earning credit until they are physically in prison was thought necessary.)
This is defendant’s strongest argument, but it has an answer. Although the legislative history and the ballot pamphlet arguments suggest that lawmakers assumed a third strike offender would be able to earn some amount of credit, the majority’s analysis does not wholly foreclose such credit. Thus, when section 667, subdivision (c) states: “if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d)” (italics added), the statute is saying the credit limit applies to defendants who have either (1) a present strike and one prior strike, or (2) a present strike and two or more prior strikes. For second strike offenders (one present strike, one prior strike), their sentence is their regular determinate sentence, doubled. Such doubling still results in a determinate term, so they may earn credits under sections 2931 and 2933, but are limited by a 20 percent lid. The Three Strikes law thus has meaning for most[3] second strike offenders.
Although third strike offenders (one present strike, two or more prior strikes) receive an indeterminate term (such as 25 years to life), they not uncommonly also receive a determinate sentence for other crimes and/or enhancements. By law, this determinate term must be served first. (§§ 667, subd. (e)(2)(B), 1170.12, subd. (c)(2)(B).) For these offenders, credit (although limited by the Three Strikes law to 20 percent) remains available to reduce the determinate portion of their sentence. The majority’s interpretation of the credit provisions of the Three Strikes law thus retains some meaning for some third strike offenders. Only when a third strike offender receives solely an indeterminate term, with no accompanying determinate component, does the credit-limiting language of the Three Strikes law have no apparent meaning.
Although it thus seems likely the scope of the credit provision of the Three Strikes law is much less than lawmakers thought, can we conclude the law is ambiguous? If so, we could accord much more weight to the legislative history (which tends to favor defendant) and also invoke the rule of *1087 lenity (also favorable to him). (People v. Hazelton (1996) 14 Cal.4th 101, 106 [58 Cal.Rptr.2d 443, 926 P.2d 423] [court must examine legislative history when meaning of statutory language is ambiguous]; People v. Garcia (1999) 21 Cal.4th 1, 10 [87 Cal.Rptr.2d 114, 980 P.2d 829] [explaining rule of lenity].) Ambiguity, of course, is a matter of degree. Although I find the law poorly drafted and confusing, I agree with the majority that the statutory language is not so ambiguous that we should deviate from its plain meaning and turn for guidance to the legislative history or the rule of lenity.
As the majority explains, we interpret the Three Strikes law as enacted, not its legislative or initiative history. We must take as our guide the actual statutory language, as it represents the truest, latest, and most definitive expression of the lawmakers’ intent. Although our conclusion today may in reality be contrary to the true intentions of the lawmakers, “[w]e could not . . . ignore the actual words of the statute in an attempt to vindicate our perception of the Legislature’s purpose in enacting the law.” (Murillo v. Fleetwood Enterprises, Inc. (1998) 17 Cal.4th 985, 993 [73 Cal.Rptr.2d 682, 953 P.2d 858].) The Legislature, of course, remains free to provide credit-earning opportunities for third strike inmates if it concludes such opportunities serve the penological and rehabilitative goals of our state.
Conclusion
This case fits neatly into what is becoming an ongoing series of recent challenges to portions of the Three Strikes law, whose drafting shortcomings have required this court to bridge the gap, fill in the blanks, resolve the conflicts, and fashion what in some cases is a regrettably complex scheme of criminal procedure. (See, e.g., People v. Jefferson, supra, 21 Cal.4th 86 [how to apply the Three Strikes law to a sentence of straight life, when there is no minimum term to double]; People v. Garcia, supra, 21 Cal.4th 1 [potential conflict in the definition of juvenile criminal adjudications that can qualify as “strikes”]; People v. Hazleton, supra, 14 Cal.4th 101 [resolving potential conflict between initiative and legislative versions of Three Strikes law with regard to out-of-state prior convictions].)
This case is a striking example of such complexity. The final result of our decision is this: (1) most second strike offenders can earn credit while in prison, but are limited to a maximum of 20 percent; (2) some second strike offenders—i.e., those, as in People v. Jefferson, supra, 21 Cal.4th 86, whose base crime called for a penalty of a straight life term—cannot earn credit in prison because they are serving an indeterminate term, albeit one with a doubled minimum eligible parole date; (3) some third strike offenders can earn some credit, also limited to a maximum of 20 percent, but subject to the *1088 further limitation that the credit can reduce only the determinate portion of their sentence; and (4) other third strike offenders, such as petitioner here, who were given an indeterminate sentence with a minimum term but no determinate component, are prohibited from earning any credit. Or, as the majority explains it (maj. opn., ante, at p. 1079), for third strike inmates in this last category, the maximum amount of credit they can earn is 20 percent of nothing.
Although I find this result very likely at odds with the intent of the lawmakers, it admittedly gives effect to the plain meaning of the statutory language. The history of the Three Strikes law, including the statements of the proponents of the law, strongly suggests the lawmakers expected third strike offenders would be able to earn credit for good behavior in prison. Nonetheless, because I conclude the majority’s result is preferable to permitting defendant to earn in-prison credit without specific statutory authorization, I join the majority opinion.
Petitioner’s petition for a rehearing was denied March 28, 2001.

All undesignated statutory references are to the Penal Code.

Section 190 has since been amended specifically to deny credit to murderers. (See § 190, subd. (e), as amended by Stats. 1997, ch. 413, § 1 [Prop. 222, as approved by voters, June 2, 1998, eff. June 3, 1998].)

It is possible for a second strike offender to have the applicable term of imprisonment for his present crime be an indeterminate one. (See People v. Jefferson (1999) 21 Cal.4th 86 [86 Cal.Rptr.2d 893, 980 P.2d 441].) If so, the second strike sentence would not be a determinate one.