[Crim. No. 11995. Third Dist. Jan. 26, 1983.]

In re ROGER J. MONIGOLD on Habeas Corpus.

486

[black redaction bars]

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Eileen Ceranowski, Deputy Attorneys General, for Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Julia Cline Newcomb, Deputy State Public Defender, for Respondent.

OPINION

SPARKS, J.—In this case we hold that a life prisoner is entitled to earn conduct credit on a determinate enhancement. Roger J. Monigold petitioned for habeas corpus relief in the Superior Court of Sacramento County. He contended that the Department of Corrections denied him equal protection of the laws by refusing to award him conduct credit under Penal Code sections 2930 through 2932 on a two-year penalty enhancement for using a firearm (Pen. Code, § 12022.5), during the commission of a second degree murder (Pen. Code, §§ 187, 189). The trial court agreed and granted the requested relief. The People appeal contending that the trial court erred in determining that Monigold was denied equal protection of the laws. We conclude as a matter of statutory construction that defendant is entitled to the relief he seeks. We therefore shall affirm the order without reaching the constitutional question.

FACTS

The facts are simple. Monigold was sentenced in 1980 to an indeterminate prison term of 15 years to life for second degree murder. (Pen. Code, §§ 189, 190.)[1] He was also sentenced to a two-year consecutive enhancement for using

---

[1]Monigold is classified as a "life prisoner" by the Board of Prison Terms. A life prisoner is administratively defined as a "prisoner serving a sentence of life with the possibility of parole" and consequently includes a prisoner sentenced to 15 years to life for a second degree murder committed on or after November 8, 1978. (Cal. Admin. Code, tit. 15, § 2000, subd. (b).)

All further statutory references are to the Penal Code.

a firearm in the commission of the murder. (§ 12022.5.) Sections 669 and 12022.5 direct that the two-year consecutive enhancement must be served prior to commencement of the indeterminate life sentence.[2] Monigold applied for conduct credit under sections 2930 through 2932 to be applied to the two-year enhancement. Section 2931, subdivision (a), provides in relevant part that "[i]n any case in which an inmate was sentenced to the state prison pursuant to Section 1170, . . . the Department of Corrections shall have the authority to reduce the term prescribed under such section by one-third for good behavior and participation consistent with subdivision (d) of Section 1170.2."

The department takes the position that since Monigold was not sentenced pursuant to section 1170 but was instead sentenced to an indeterminate prison term under section 1168, he is not entitled to conduct credit.[3] His application for conduct credit on his two-year enhancement was thus denied.

In his petition Monigold asserted that the denial of the right to conduct credit on his two-year enhancement for the use of a firearm was a denial of equal protection of the laws. The trial court held that since liberty is a fundamental interest only a compelling state interest could justify the denial of conduct credits to Monigold. The court concluded that there was no such compelling interest, nor even a rational basis, for such a law. The petition for habeas corpus relief was therefore granted.

## DISCUSSION

"The concept of the equal protection of the laws," the California Supreme Court observed in *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194], "compels

---

[2]Section 669, in pertinent part, reads: "Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment imposed pursuant to Sections 1170, 1170.1, 667.5, 12022, 12022.5, 12022.6, and 12022.7, the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046."

Section 12022.5 provides: "Any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of . . . two years, unless use of a firearm is an element of the offense of which he was convicted. [¶] The additional term provided by this section may be imposed in cases of assault with a deadly weapon under Section 245."

[3]Section 1168 provides: "(a) Every person who commits a public offense, for which any specification of three time periods of imprisonment in any state prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced pursuant to Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2. [¶] (b) For any person not sentenced under such provision, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment."

recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." Consequently, "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]; italics in original.)[4]

Before reaching the issue of whether the Legislature has created an illegitimate classification in treating persons situated like Monigold differently than other prisoners, it must first be determined that the Legislature in fact intended to do so. This case consequently turns on the proper interpretation of section 2931. The dispositive issue is whether the Legislature intended that section's phrase, "sentenced to the state prison pursuant to section 1170," to encompass a determinate term of imprisonment imposed pursuant to section 12022.5. For the reasons which follow, we conclude that the Legislature intended that conduct credit under section 2931 should apply to all determinate terms, including enhancements.

In order to ascertain the legislative intent it is necessary to review the substantial change in California penal law occasioned by the enactment of the Uniform Determinate Sentencing Act of 1976 (DSL). For 60 years prior to 1977, California had an indeterminate sentencing law (ISL). (See *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165, 168-169 [141 Cal.Rptr. 383].) Under the ISL the courts did not specify a definite term of imprisonment; rather the court merely imposed "the term provided by law." (See former § 1168.) The terms provided by law were not specific terms but consisted of ranges, often very broad ones. It was for the governing authority of the prison to determine the prisoner's release date based upon the offender's conduct in prison. "In theory, the indeterminate sentencing system would allow each prisoner's sentence to be tailored to his rehabilitative efforts in prison, enabling each in-

---

[4]California courts have historically applied the traditional two-tiered analysis. (*Cotton* v. *Municipal Court* (1976) 59 Cal.App.3d 601, 605 [130 Cal.Rptr. 876].) Under that binary analysis, the first issue is whether, in the words of Justice Kaus, "we go first class or tourist—whether we apply the 'strict scrutiny' standard or the traditional 'rationability' test." (*Alex T.* v. *Superior Court* (1977) 72 Cal.App.3d 24, 28 [140 Cal.Rptr. 17].)"[O]rdinarily legislation is valid if it bears a rational relationship to a conceivable legitimate state purpose, but distinctions involving suspect classifications or touching upon fundamental rights require closer examination, and are valid only if the state proves that the distinctions are necessary to serve a compelling state interest. [Citations.]" (*Citizens Against Forced Annexation* v. *Local Agency Formation Com.* (1982) 32 Cal.3d 816, 822 [187 Cal.Rtpr. 423, 654 P.2d 193].)

Monigold argues that the strict scrutiny standard applies here because the classification deprives him of an earlier release from prison and hence affects his fundamental interest in liberty. (See *People* v. *Olivas* (1976) 17 Cal.3d 236, 251[131 Cal.Rptr. 55, 551 P.2d 375].) The Attorney General does not address the standard of review issue. Instead, he contends that unequal treatment of prisoners convicted of different crimes does not constitute a denial of equal protection of the laws because the offenders are not similarly situated. Because of our interpretation of the statutory scheme we do not resolve the standard of review issue.

dividual to be released as soon as he was capable of living in society without resorting to crime." (Comment, *Senate Bill 42 - The End of the Indeterminate Sentence* (1977) 17 Santa Clara L.Rev. 133.)

Effective July 1, 1977, the ISL was repealed and the DSL was enacted in its place. (Stats. 1976, ch. 1139.) This legislative action marked a change in the policy of imprisonment from rehabilitation to punishment. (§ 1170, subd. (a) (1); *In re Stanworth* (1982) 33 Cal.3d 176, 182 [187 Cal.Rptr. 783, 654 P.2d 1311].) For most offenses the DSL provides three possible prison sentences. (*Way* v. *Superior Court, supra,* 74 Cal.App.3d at pp. 170-171.) The sentencing court now selects one of the possible terms as the base sentence. To this is added any applicable enhancement, such as those for prior prison terms (§§ 667.5; 667.51; 667.6; 667.7), consecutive sentencing for multiple offenses (§§ 669; 1170.1), and other special enhancements. (See e.g., §§ 12022; 12022.3; 12022.5; 12022.6; 12022.7 and 12022.8.) The enhancements were indeterminate under the ISL and are now determinate under the DSL. (Cf. former § 12022.5, five years to life, with current § 12022.5, two years.) This basic determinate sentencing scheme is set forth in chapter 4.5 (commencing with § 1170) of title 7 of part 2 of the Penal Code.

With the enactment of the DSL certain crimes remained punishable by indeterminate sentences. These were basically the life-sentence crimes, such as first degree murder (former § 190.5), kidnaping for robbery or ransom (§ 209), and trainwrecking (§ 218). By an initiative measure adopted at the November 7, 1978, General Election, the punishment for second degree murder was increased from a determinate term of five, six or seven years to an indeterminate term of fifteen years to life. A sentence of 15 years to life is by its nature an indeterminate term. (*In re Quinn* (1945) 25 Cal.2d 799, 801 [154 P.2d 875].) The punishment for indeterminate crimes cannot be determined as set forth in the determinate sentencing scheme in section 1170 et seq., and thus section 1168, subdivision (b), provides that for persons not sentenced under those provisions the court shall not fix the term or duration of the period of imprisonment.[5]

For those prisoners who receive a determinate sentence the Legislature has provided for conduct credits to reduce the total sentence by up to one-third. (§§ 2930-2932.)[6] Section 2931 invests the Department of Corrections with the

---

[5]Section 1168, subdivision (b), is also applicable to crimes for which the punishment is one year and a day in state prison. (See for example § 270, child neglect, and § 502.7, misuse of a telephone or telegraph.) It has been noted that a major issue as to the application of the provisions of chapter 4.5 relating to enhancements and parole is posed by this situation. (See Oppenheim, *Computing a Determinate Sentence . . . New Math Hits the Courts* (1976) 51 State Bar J. 604, 609, 612, fn. 11.) We are not here concerned with a one year and a day sentence.

[6]Effective January 1, 1983, the Legislature substantially revised the statutory scheme for sentence reductions. (See Stats. 1982, ch. 1234.)

authority to allow conduct credits to those persons sentenced under section 1170, and to those persons who would have been sentenced under that section if they had committed their crimes after its effective date.

For indeterminate term prisoners the Legislature enacted section 3040, which provides that the Board of Prison Terms shall have the power to parole persons sentenced pursuant to section 1168.[7] A life-sentence prisoner must serve a minimum calendar term before becoming eligible for parole. Conduct credits do not apply to that minimum term. (§§ 3046, 3049; *People* v. *Sampsell* (1950) 34 Cal.2d 757, 764 [214 P.2d 813].) However, the Board of Prison Terms has provided by regulation for the application of conduct credits to such prisoners in determining their ultimate release date after the service of the minimum calendar term. (Cal. Admin. Code, tit. 15, § 2290.)[8]

It can be seen that with the original enactment of the DSL the Legislature provided for two classes of prisoners, those sentenced to determinate terms under chapter 4.5, and those sentenced to indeterminate terms under section 1168. Prisoners sentenced to determinate terms had a date certain upon which they would be released, while those sentenced to indeterminate terms were to be released on parole when the Board of Prison Terms determined that release was appropriate. (§ 3040 et seq.; see also Cal. Admin. Code, tit. 15, § 2280 et seq.) Through good conduct in prison both types of prisoner can earn earlier release: determinate prisoners through the application of conduct credits to reduce their terms by one-third, and indeterminate prisoners by behaving in a manner which would convince the Board of Prison Terms that an earlier release was appropriate and also by an award of regulatory conduct credits. Thus no prisoner entitled to ultimate release is to be denied consideration of his prison conduct.

When the DSL was enacted section 669 provided with respect to multiple convictions: ". . . if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without the possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term." Pursuant to this merger provision the Supreme Court held that a finding of the use

---

[7]For a further discussion of the procedures for setting a parole date for life prisoners, see *In re Stanworth, supra,* 33 Cal.3d at pages 183 to 186.

[8]That regulation in pertinent part provides: "(a) General. Life prisoners may earn postconviction credit for each year spent in state prison. Postconviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, postconviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may postconviction credit advance a release date earlier than the minimum eligible parole date. [¶] (b) Amount of Credit. Postconviction credit shall be granted to life prisoners in a manner which allows similar amounts of time to prisoners in similar circumstances. [¶] The suggested amount of postconviction credit is 4 months for each year served since the date the life term started. . . ."

of a firearm could be given no effect when the defendant received a life term for the offense in which the firearm was used. (*People* v. *Walker* (1976) 18 Cal.3d 232, 244 [133 Cal.Rptr. 520, 555 P.2d 306].) The enactment of the DSL in 1976, effective July 1, 1977, did not alter section 669. Accordingly, a person who committed a crime after July 1st for which a life sentence was imposed was not required to serve any term for an enhancement. (See e.g., *People* v. *Claxton* (1982) 129 Cal.App.3d 638, 670 [181 Cal.Rptr. 281]; *People* v. *Rogers* (1981) 124 Cal.App.3d 1071, 1082 [177 Cal.Rptr. 747].)

In 1978, the Legislature amended section 669, to be applied prospectively only and to be effective on January 1, 1979, by abolishing the merger provision. (Stats. 1978, ch. 579, §§ 28, 48.) The amended version of section 669, provided, inter alia: "[L]ife sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another or with any other term of imprisonment for a felony conviction. Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment imposed pursuant to Sections 1170, 1170.1, 667.5, 12022, 12022.5, 12022.6, and 12022.7, the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046."

The amendment of section 669 is aimed at multiplicity of offenses (consecutive sentences under §§ 1170 and 1170.1), recidivism (enhancements for prior prison terms under § 667.5), use of a weapon and being armed with or using a firearm (§§ 12022 and 12022.5), taking, damaging or destroying property (§ 12022.6), and the infliction of bodily injury (§ 12022.7). ▮ The amendment serves two legislative purposes. First, it provides an additional deterrent for those who would commit crimes for which a life sentence may be imposed. Second, it serves the punitive purpose of the DSL by subjecting those guilty of multiple offenses and enhancements to punishment in addition to that which all guilty of life-sentence crimes must serve. Both of these purposes were defeated by section 669 as it existed at the time of the enactment of the DSL.

The amendment also created a third class of prisoners: those sentenced both to an indeterminate life term and a consecutive determinate term. Nothing in the amendment of section 669 indicates an intent to deny prisoners subject to both determinate and indeterminate sentences conduct credit on their determinate sentences. Indeed it appears clear that those indeterminate prisoners who are also sentenced to consecutive determinate terms for multiple offenses (§§ 1170 and 1170.1), rather than enhancements, would be entitled to earn conduct credit on the consecutive determinate terms since they would indisputably be sentenced "pursuant to section 1170." (§ 2931.) A defendant who is convicted of murder and an unrelated robbery while armed with a firearm, for example, may now be sentenced both to an indeterminate life term for the murder

and a determinate term for the robbery and firearm enhancement. (See *People v. Day* (1981) 117 Cal.App.3d 932, 936-937 [173 Cal.Rptr. 9].) Under section 669, the determinate term must be served first. It is clear that such an offender would be entitled to conduct credit under section 2931 on the determinate term for robbery and the firearm enhancement. A statutory classification which purported to treat such a murderer differently from one in Monigold's situation is obviously fraught with equal protection problems. Any legislative purpose in denying an indeterminate prisoner conduct credit on a consecutive enhancement under sections 667.5, 12022, 12022.5, 12022.6 or 12022.7, would apply equally with regard to a consecutive sentence for multiple offenses under sections 1170 and 1170.1. "But we need not and *do not* reach such issues when, as here, a statute may be reasonably construed so as to render it constitutionally valid. [Citation.]" (*In re Harper* (1979) 96 Cal.App.3d 138, 141 [157 Cal. Rptr. 759]; italics in original.)

The Department of Corrections bases its refusal to allow Monigold conduct credit on a strict construction of section 2931. That section cannot be viewed in isolation, however. As we have noted, it was not enacted as a means of denying consideration of in-prison conduct to indeterminate prisoners, but was rather part of an overall legislative scheme whereby determinate prisoners could earn statutory conduct credit and indeterminate prisoners, after the service of their minimum calendar term, could earn conduct credit as provided for by the Board of Prison Terms. (§§ 2931; 3040; Cal. Admin. Code, tit. 15, § 2290.) Nowhere in the Penal Code does it appear that the Legislature has intended that persons confined in state prison should be required to serve a period of confinement during which their conduct cannot be considered.[9]

When section 2931 is viewed in light of the overall legislative scheme of which it is part and in light of the history of the return to determinate sentencing it does not appear that the Legislature intended the meaning applied by the Department of Corrections. Instead, it appears simply that the Legislature intended that determinate terms be reduced in a determinate manner by an award of conduct credit, and that indeterminate terms be effected in an indeterminate manner through parole consideration of in-prison conduct. An enhancement under section 12022.5 is a determinate term. It is specifically so described in section 669. Accordingly, pursuant to this legislative scheme, and in order to avoid constitutional questions, section 2931 should be construed to permit all determinate terms to be reduced by the application of conduct credits.

Our conclusion is fortified by the initiative amendment of section 190 by the passage of Proposition 7 at the November 7, 1978, General Election. That

---

[9]Even those prisoners confined for life without the possibility of parole may hope to eventually win a pardon or commutation of sentence from the Governor and thus have an incentive for good behavior. (Cal. Const., art. V, § 8; §§ 4800-4814.)

amendment, as we have already noted, changed the punishment for second degree murder from a determinate term of five, six, or seven years, to an indeterminate term of fifteen years to life. It also changed the punishment for first degree murder without special circumstances from life to 25 years to life. While that amendment made the punishment for murder more onerous, it expressly provided for the application of conduct credit to reduce the minimum term. In relevant part, section 190 now provides that "The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time." This section therefore indicates a legislative intent to permit even some persons sentenced only to an indeterminate life term to earn conduct credit while incarcerated.

■ In summary, we construe the phrase in section 2931 authorizing conduct credit for inmates "sentenced to the state prison pursuant to section 1170" to mean "sentenced to the state prison for a determinate term." In our view, the reference to section 1170 is merely a shorthand way of referring to a determinate term and was used by the Legislature to distinguish such a sentence from an indeterminate one imposed under section 1168, subdivision (b).[10] Monigold received two sentences: an indeterminate term for second degree murder of 15 years to life and a determinate term of 2 years for the use of a firearm during that murder. Like all other prisoners serving a determinate term, he is entitled to earn conduct credit to reduce his determinate sentence. Accordingly, we affirm the order of the trial court directing that the department award Monigold conduct credits on his determinate term under section 12022.5 to the extent he earns such credits.

The judgment is affirmed.

Carr, Acting P. J., and Ford, J.,* concurred.

---

[10]For the same reasons the phrase contained in the newly enacted section 2933, "sentenced to state prison, under Section 1170," should be similarly construed. (See Stats. 1982, ch. 1234, § 2933, p. 4551.)

*Assigned by the Chairperson of the Judicial Council.