103 Cal.Rptr.2d 762 (2001)
24 Cal.4th 1073
16 P.3d 176
In re Adrian Ben CERVERA on Habeas Corpus.
No. S075310.
Supreme Court of California.
February 8, 2001.
Rehearing Denied March 28, 2001.
*763 Michael Satris, Bolinas, under appointment by the Supreme Court, for Petitioner Adrian Ben Cervera.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Peter J. Siggins and Paul D. Gifford, Assistant Attorneys General, Darrell L. Lepkowsky, Barbara C. Spiegel and David M. Verhey, Deputy Attorneys General, for Respondent the People.
MOSK, J.
We granted review in this cause in order to settle an important issue arising under what is popularly, and singularly, known as the "Three Strikes" law, a pair of statutes that are identical in part pertinent here, one enacted from a bill introduced in the Legislature (Stats.1994, ch. 12, § 1, pp. 71-75, adding Pen.Code, § 667, subds. (b)(i)), the other enacted from an initiative measure presented to the people (Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994), adding Pen.Code, § 1170.12).
Notwithstanding any other law or provision of law, the Three Strikes law governs when a defendant is convicted of a felony or "strike" of any kind, and was previously convicted of one or more felonies or strikes defined as serious or violent. (Pen.Code, §§ 667, subd. (c), 1170.12, subd. (a); see id, §§ 667, subds. (d), (e), (f), 1170.12, subds. (b), (c), (d).)
The Three Strikes law provides that, if a defendant is convicted of a felony of any kind and was previously convicted of a single felony defined as serious or violentif he has two strikeshe must be sentenced to a term of imprisonment as follows: If he would otherwise have been sentenced to a "determinate term" (Pen. Code, §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), which is of fixed duration (see generally id., § 1170), he must be sentenced to a "determinate term" that is "twice" as long (id., §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)). By contrast, if he would otherwise have been sentenced to an "indeterminate term" (id., §§ 667, subd. (c)(1), 1170.12, subd. (c)(1)), which is not of fixed duration (see generally id., § 1168), with a "minimum term," he must be sentenced to an indeterminate term with a minimum term that is "twice" as long (id., §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).
Likewise, the Three Strikes law provides that, if a defendant is convicted of a felony of any kind and was previously convicted of at least two felonies defined as serious or violentif he has three strikeshe must be sentenced to an "indeterminate term of life imprisonment with a minimum term" calculated in accordance with certain specified formulas, but no less than 25 years. (Pen.Code, §§ 667, subd. (e)(2)(A), 1170.12, subd. (c)(2)(A).)
Lastly, the Three Strikes law declares that, if a defendant is convicted of a felony of any kind, and was previously convicted of one or more felonies defined as serious or violentif he has either two or three strikeshe is subject to certain rules. (Pen.Code, §§ 667, subd. (c), 1170.12, subd. (a).) Among which is the following: "The total amount of credits awarded" to a defendant with either two or three strikes for conduct in prison "pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3" of the Penal Code (hereafter article 2.5)which authorizes such credits for use only against determinate terms of imprisonment (see Pen. Code, § 2930 et seq.; see generally id., § 1170; see also In re Monigold (1983) 139 Cal.App.3d 485, 488-94, 188 Cal. Rptr. 698), but not against indeterminate terms"shall not exceed one-fifth of the total term of imprisonment imposed" (Pen. Code, §§ 667, subd. (c)(5), 1170.12, subd. (a)(5)).
The question that we address on review is: Does the Three Strikes law authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits for use against his mandatory indeterminate term of life imprisonment?
The answer that we must give is: No.

*764 I
Inmate Adrian Ben Cervera submitted a petition for writ of habeas corpus to Division Three of the Fourth Appellate District of the Court of Appeal in conjunction with an appeal, then pending, that he had taken from a judgment of conviction rendered by the Superior Court of Orange County.[1] In pertinent part, Cervera alleged facts to the following effect: He was convicted of a felony, specifically, second degree robbery (which happens to be serious), under various circumstances triggering enhancement of sentence, and had previously been convicted of two serious felonies, otherwise unidentified; as a defendant with three strikes, he was sentenced to a mandatory indeterminate term of life imprisonment with a minimum term of 25 years for second degree robbery; he was also sentenced to a determinate term of 12 years for the sentence-enhancing circumstances; prior to his commitment to prison, the California Department of Corrections (hereafter CDC) had interpreted the Three Strikes law to authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment, as well as against any qualifying determinate term that happens to be imposed, subject only to the specified limitation to one-fifth of the total term, and proceeded to implement its interpretation; but shortly after his commitment, following People v. Stofle (1996) 45 Cal.App.4th 417, 420-421, 52 Cal.Rptr.2d 829 (hereafter Stofle), CDC interpreted the Three Strikes law anew to allow a defendant with three strikes to be awarded such credits only against any qualifying determinate term that happens to be imposed, but not against his mandatory indeterminate term of life imprisonment, and proceeded to implement its new interpretation. He claimed that CDC's former interpretation of the Three Strikes law was sound and its present interpretation was not, and on that basis prayed for relief including an order directing it to depart from its present implementation of the Three Strikes law and return to its former implementation.
By order, the Court of Appeal summarily denied Cervera's habeas corpus petition, citing Stofle in support.
Cervera submitted a petition for review. We granted his application. At the same time, we transferred the matter to the Court of Appeal with directions to vacate its order summarily denying his habeas corpus petition and to issue an order to show cause to the Director of Corrections.
Complying with our directions, the Court of Appeal vacated the indicated order of summary denial and issued the indicated order to show cause.
On behalf of the Director of Corrections, the acting warden of the prison to which Cervera had been committed submitted a return. He admitted the substance of the facts, recounted above, that Cervera had alleged. But he denied Cervera's claim challenging CDC's present interpretation of the Three Strikes law, and consequently opposed his prayer for relief against its present implementation.
Cervera submitted a traverse, styled a "denial," in which, among other things, he again alleged the facts, recounted above, that he had alleged originally.
Following oral argument, the Court of Appeal, through a unanimous opinion, rendered judgment denying Cervera's habeas corpus petition.
Cervera again submitted a petition for review. We again granted his application. We now affirm.

II
The question that we address on review concerns the meaning of the Three Strikes law, specifically, whether it authorizes *765 or allows a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment.
To determine the meaning of a statute, we seek to discern the sense of its language, in full context, in light of its purpose. (See, e.g., West Pico Furniture Co. v. Pacific Finance Loans (1970) 2 Cal.3d 594, 608, 86 Cal.Rptr. 793, 469 P.2d 665.)
The purpose of the Three Strikes law is manifest. It is to impose longer terms of imprisonment on defendants with two strikes and generally still longer terms on defendants with three strikes. (See, e.g., People v. Garcia (1999) 20 Cal.4th 490, 501, 85 Cal.Rptr.2d 280, 976 P.2d 831.)
Also manifest is the sense of the language of the Three Strikes law in full context.
As noted, the Three Strikes law declares that "[t]he total amount of credits awarded" to a defendant with either two or three strikes for conduct in prison "pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3" of the Penal Codewhich authorizes such credits for use only against determinate terms of imprisonment, but not against indeterminate terms"shall not exceed one-fifth of the total term of imprisonment imposed...." (Pen.Code, §§ 667, subd. (c)(5), 1170.12, subd. (a)(5).)
The Three Strikes law's declaration does not itself authorize article 2.5 prison conduct credits for use against indeterminate terms of imprisonmentor indeed against any terms of imprisonment. Rather, it limits the award of such credits as authorized by article 2.5. Hence, it must be understood simply to accept article 2.5's authorization of such credits against determinate terms only, but not to extend it against indeterminate terms as well. In this respect, it is unlike other provisions of other laws, which indeed extend article 2.5's authorization of such credits to indeterminate terms, specifically, to such terms' minimum terms. (See, e.g., Pen. Code, §§ 217.1, subd. (b), 667.51, subd. (d), 667.61, subd. (j), 667.7, subd. (a)(1), 667.71, subd. (b), 667.75.) Illustrative is the requirement, which antedates the Three Strikes law (see Stats.1983, ch. 683, § 1, p. 2645), to the effect that a defendant convicted of the felony of the attempted murder of a public official must be sentenced to an indeterminate term of life imprisonment with a specified minimum term: "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3" of the Penal Code "shall apply to reduce" the specified "minimum term." (Pen.Code, § 217.1, subd. (b), italics added.)
It is true that the Three Strikes law's declaration does not prohibit article 2.5 prison conduct credits for use against indeterminate terms of imprisonment. In this respect, it is unlike other provisions of other laws. (See Pen.Code, §§ 190, subd. (e), 664, subd. (f).) Illustrative is the requirement, which antedates the Three Strikes law (see Stats.1987, ch. 1006, § 1, p. 3368; Stats. 1993, ch. 609, § 3, p. 3266), to the effect that a defendant convicted of the felony of murder must be sentenced to an indeterminate term of life imprisonment with different specified minimum terms depending on different specified circumstances: "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3" of the Penal Code "shall not apply to reduce any" such specified "minimum term." (Pen.Code, § 190, subd. (e), italics added.)
But the fact that the Three Strikes law's declaration does not prohibit article 2.5 prison conduct credits for use against indeterminate terms of imprisonment matters not. What matters, rather, is that it does not authorize such credits for use against such terms. Credits of any sort are available only if, and to the extent that, they are authorized. In the absence of authorization for use against indeterminate terms, article 2.5 prison conduct credits are simply unavailable.
*766 It' is true as well that certain documents within the history of the bill and the initiative measure that would each become the Three Strikes law summarized its declaration by paraphrasing the limitation that it imposed on article 2.5 prison conduct credits without taking into account article 2.5's authorization of such credits against determinate terms only. For example, it was stated that the Three Strikes law would "require that a person who has been convicted previously of one or more serious or violent felonies may not earn credits to reduce the time he ... spends in prison for the new offense, by more than one-fifth...." (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) analysis of Prop. 184 by Legis. Analyst, p. 33 [initiative measure]; accord, Legis. Analyst Elizabeth G. Hill, Joint Legis. Budget Com., letter to Atty. Gen. Daniel E. Lungren, Sept. 8, 1993, p. 2 [initiative measure]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, p. 1 [bill]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, pp. 1, 2 [bill]; Ballot Pamp., Gen. Elec, supra, argument in favor of Prop. 184, p. 36 [initiative measure].)
Not all of the documents within the Three Strikes law's legislative and initiative history overlooked the fact that article 2.5 authorizes prison conduct credits against determinate terms of imprisonment only. For example, it was implied on a chart that the Three Strikes law would not authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment when it was represented thereon that the minimum term of not less than 25 years would remain not less than 25 years even if one "[a]ssumes" that such a defendant "earns maximum credits" of this sort. (Ballot Pamp., Gen. Elec, supra, analysis of Prop. 184 by Legis. Analyst, p. 34, fig. 1 [initiative measure]; see also Petn., Proposed Initiative Stat, relating to Sentence Enhancement and Repeat Offenders, pp. 1, 2 [initiative measure]; Ballot Pamp., Gen. Elec, supra, Official Title and Summary of Prop. 184 by Atty. Gen., p. 32 [initiative measure].) The minimum term of not less than 25 years would remain not less than 25 years only if the maximum credits were zero.
But, with that said, it was the Three Strikes law that was enacted, not any of the documents within its legislative or initiative history. A statute, of Course, must prevail over any summary. Were it not so, no statute could ever be enacted whole and entire. For every summary, by definition, is incomplete. A summary is a model of the body of a statute, well executed or not as the case may be. It is not a procrustean bed for the stretching or lopping off of its limbs. The summary must yield to the statute, not the statute to the summary.
It is also true that CDC had formerly interpreted the Three Strikes law to authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment, as well as against any determinate term, subject only to the specified limitation to one-fifth of the total term.
But, having exercised our independent judgment, and having given all appropriate deference (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 8, 78 Cal.Rptr.2d 1, 960 P.2d 1031; accord, id. at p. 16, 78 Cal.Rptr.2d 1, 960 P.2d 1031 (cone opn. of Mosk, J.)), we find CDC's former interpretation of the Three Strikes law incorrect, and reject it accordingly.
Therefore, in view of its purpose, which is to impose longer terms of imprisonment on defendants with two strikes and generally still longer terms on defendants with three strikes, and in view of its language in full context, which sets up a mechanism for the effectuation of its purpose, we conclude, like the court in Stofle before us, that the Three Strikes law does not authorize *767 or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment.
Opposing our conclusion, Cervera argues that the Three Strikes law does in fact authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment. For the reasons already stated, we are not persuaded.
Cervera then argues that it is at least ambiguous whether the Three Strikes law authorizes or allows a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment, and that this asserted ambiguity should be resolved in his favor through the operation of canons of statutory construction such as the "policy" that a "statute" should be interpreted "as favorably to the defendant as its language and the circumstances of its application may reasonably permit." (Keeler v. Superior Court (1970) 2 Cal.3d 619, 631, 87 Cal.Rptr. 481, 470 P.2d 617; accord, People v. Robles (2000) 23 Cal.4th 1106, 1115, 99 Cal.Rptr.2d 120, 5 P.3d 176.) Again, we are not persuaded. That is because we discern no ambiguity on which they might operate. In particular, no ambiguity arises from any pre-enactment document with a summary paraphrasing the Three Strikes law's limitation on article 2.5 prison conduct credits without taking into account article 2.5's authorization of such credits against determinate terms only. A summary of this kind does not make the Three Strikes law unclear, but merely reveals itself to be at best incomplete. Neither does any ambiguity arise from the fact that the Three Strikes law does not prohibit article 2.5 prison conduct credits for use against indeterminate terms. The fact that the Three Strikes law does not authorize such credits is clear, and sufficient.[2]
Cervera finally argues in substance that, even if the Three Strikes law does not authorize or allow a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment, it authorizes or allows him to be awarded such credits against such indeterminate term's minimum term, which he asserts is itself a determinate term. Yet again, we are not persuaded. The Three Strikes law does not so authorize or allow. Moreover, a minimum term is not a determinate *768 term. A "determinate" term is of fixed duration (see generally Pen.Code, § 1170), specifying as it does both an upper limit and a lower limit, which is by definition the same. A "minimum" term, by contrast, is not of fixed duration, specifying only a lower limit.[3]
We recognize that a defendant with three strikes would have an incentive to behave well if the Three Strikes law authorized or allowed him to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonmentthat is, to reduce his indeterminate term's minimum term. But we cannot ignore the fact that he has such an incentive even though it does notthat is, to demonstrate his suitability for release on parole as soon as he has served his indeterminate term's minimum term (see In re Monigold, supra, 139 Cal.App.3d at p. 491, 188 Cal. Rptr. 698). Whether an incentive of this sort is adequate or inadequate is not for us to say. In any event, it has no bearing on whether the Three Strikes law authorizes or allows such a defendant to be awarded such credits against such an indeterminate term.

III
Turning to the case at bar, we believe that the Court of Appeal did not err by denying Cervera's petition for writ of habeas corpus. Cervera's claim challenging CDC's present interpretation of the Three Strikes law as allowing a defendant with three strikes to be awarded article 2.5 prison conduct credits only against any qualifying determinate term of imprisonment that happens to be imposed, but not against his mandatory indeterminate term of life imprisonment, is without merit. For, as we have explained, the Three Strikes law in fact does not authorize or allow such a defendant to be awarded such credits against such an indeterminate term. Hence, Cervera's prayer for relief against CDC's present implementation of the Three Strikes law falls as unsupported.

IV
For the reasons stated above, we conclude that we must affirm the judgment of the Court of Appeal.
It is so ordered.
GEORGE, C.J., KENNARD, J., BAXTER, J., CHIN, J, and BROWN, J., concur.
Concurring Opinion by WERDEGAR, J.
I agree with the majority's conclusion that a criminal defendant given an indeterminate *769 sentence pursuant to the "Three Strikes" law (Pen.Code,[1] §§ 667, subds. (b)-(i), 1170.12) is not statutorily authorized to earn any credit to reduce his or her term while serving that sentence. As the majority explains, when the Three Strikes law addresses the issue of credits, it refers to "credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3" (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)) which, in turn, refers to Penal Code sections that affect determinate sentences only. Because defendant received an indeterminate sentence, it appears no credit is authorized.
Although I join in the majority's resolution of the question, I do so only because I view it as the best of two unsatisfactory options; I do not share the majority's confidence that in fact we have accurately ascertained the lawmakers' true intent. By many accounts, defendant is correct that the framers of the Three Strikes law, whether the Legislature (§ 667, subds.(b)(i)) or the electorate (§ 1170.12), anticipated or assumed inmates like defendant would be entitled to earn credit to reduce the minimum term of their indeterminate Three Strikes sentence, subject only to two limitations: they could reduce their sentence by no more than a total of 20 percent (i.e, "one-fifth of the total term of imprisonment") (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)), and they could not begin earning credits until physically residing in prison (ibid.).
For example, for the third reading of Assembly Bill No. 971 (1993-1994 Reg. Sess.), which would eventually become the legislative version of the Three Strikes law, a memorandum containing a revised analysis of the bill was prepared for the Senate Rules Committee. In its digest of the bill, the memorandum noted: "This bill provides that: [¶] ... [¶] 2. A person who has been convicted of one or more prior serious or violent felonies be limited to good-time/work-time credits not to exceed one-fifth of the total term of imprisonment imposed, for any new felony." (Off. of Sen. Floor Analyses, Rep. to Sen. Rules Com. on Assem. Bill No. 971 (1993-1994 Reg. Sess.) Mar. 2, 1994, p. 1, italics added.) In the analysis portion, speaking of third strike offenders, the memorandum stated: "This bill would provide that a person sentenced under the provisions of this bill ... may only receive sentence credits limited to a maximum of one-fifth the total sentence, allowing for release from prison in not less than 20 years." (Id. at p. 2, italics added.) The italicized phrases suggest that, at the time the bill was being considered, lawmakers understood that third strike offenders could earn up to 20 percent credit, thereby reducing their minimum terms from 25 years to 20 years.
The historical evidence that lawmakers assumed third strike offenders could earn some credit is even stronger for the initiative version of the Three Strikes law. The analysis by the Legislative Analyst that prefaced the description of Proposition 184 in the ballot pamphlet provided that "a person who has been convicted previously of one or more serious or violent felonies may not earn credits to reduce the time he or she spends in prison for the new offense, by more than one-fifth (rather than the previous maximum of one-half)...." (Ballot Pamp, Gen. Elec. (Nov. 8, 1994) analysis of Prop. 184 by Legis. Analyst, p. 33.) The Legislative Analyst thus appears to have assumed the typical third strike offender would be able to earn credit to reduce his or her minimum sentence by up to 20 percent. (See People v. Birkett (1999) 21 Cal.4th 226, 243-244, 87 Cal. Rptr.2d 205, 980 P.2d 912 [reliance on statement by Legislative Analyst to determine meaning of initiative measure is proper].)
Similarly, in the argument in favor of Proposition 184, the proponents (including Mike Reynolds) asserted: "A `truth in sentencing' *770 provision requires felons to serve at least 80% of their terms for second and third strike convictions." (Ballot Pamp., Gen. Elec, supra, argument in favor of Prop. 184, p. 36, italics added; see Harwich v. Superior Court (1999) 21 Cal.4th 272, 277-280, 87 Cal.Rptr.2d 222, 980 P.2d 927 [reliance on arguments in ballot pamphlet to determine meaning of initiative measure is proper].) The proponents of the Three Strikes law thus expressed an understanding that third strike offenders would earn credit and never suggested that for third strike offenders the "one-fifth" limitation on credit meant one-fifth of nothing.
That the lawmakers behind both the legislative and initiative versions of the Three Strikes law assumed a typical third strike offender could reduce his or her minimum term by 20 percent thus seems fairly clear, despite the fact that a 25-year-to-life prison term is an indeterminate, not a determinate, term. Considered against the background of the law as it existed at the time, that assumption was reasonable. At the time the Three Strikes law was enacted in 1994, the credit provisions of sections 2931 and 2933 applied to virtually every crime that carried a penalty of an indeterminate term. Although the prescribed terms of imprisonment for these crimes were not determinate, most had statutorily mandated minimum terms that were determinate. For example, in 1994, section 190, which governs sentencing for murder, provided that "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term of 15, 20, or 25 years in the state prison imposed pursuant to this section." (§ 190, subd. (a), as amended by Stats. 1993, ch. 609, § 3, p. 3266, italics added.)[2]
In addition, individual statutes authorized credits against indeterminate terms. For example, section 217.1, subdivision (b), then (in 1994) as now, provided an indeterminate term of 15 years to life for attempting to murder certain public officials, but specifically allowed for earning credit against the minimum term. The same scheme applied, both in 1994 and now, to convictions for lewd or lascivious conduct where the offender had suffered prior convictions for certain sex crimes (§ 667.51, subd. (d) [15-year-to-life term, credits specifically allowed]). The two- and three-strike sex crime statute (§ 667.61) imposes terms of 15 and 25 years to life, respectively, and both terms may be reduced by earning credit, although credits are limited to 15 percent (§ 667.61, subd. (j)). Other examples exist, but these are illustrative. Viewed in context with these laws governing indeterminate terms, lawmakers could reasonably have assumed the new law would permit a third strike offender to reduce his or her minimum term by 20 percent under the new law, despite the fact the overall sentence was an indeterminate one.
The wording of the Three Strikes law also bolsters defendant's side of the argument. Section 667, subdivision (c)(5) and section 1170.12, subdivision (a)(5) both provide: "The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not exceed one-fifth of the total term of imprisonment imposed and shall not accrue until the defendant is physically placed in the state prison." If this statutory language, with its cross-reference to sections 2931 and 2933, means third strike offenders are prohibited from earning any credit at all, it seems an exceedingly odd way to say so. A reasonable alternative interpretation of the credit-limiting language in section 667, subdivision (c)(5) and section 1170.12, subdivision (a)(5) is that a third strike offender can earn, credit, but that such credit is simply limited to 20 percent. If no credit were available *771 at all, what would be the need to limit the overall amount? (One might also ask whyif third strike offenders are entitled to no credit anywayprohibiting such inmates from earning credit until they are physically in prison was thought necessary.)
This is defendant's strongest argument, but it has an answer. Although the legislative history and the ballot pamphlet arguments suggest that lawmakers assumed a third strike offender would be able to earn some amount of credit, the majority's analysis does not wholly foreclose such credit. Thus, when section 667, subdivision (c) states: "if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d)" (italics added), the statute is saying the credit limit applies to defendants who have either (1) a present strike and one prior strike, or (2) a present strike and two or more prior strikes. For second strike offenders (one present strike, one prior strike), their sentence is their regular determinate sentence, doubled. Such doubling still results in a determinate term, so they may earn credits under sections 2931 and 2933, but are limited by a 20 percent lid. The Three Strikes law thus has meaning for most[3] second strike offenders.
Although third strike offenders (one present strike, two or more prior strikes) receive an indeterminate term (such as 25 years to life), they not uncommonly also receive a determinate sentence for other crimes and/or enhancements. By law, this determinate term must be served first. (§§ 667, subd. (e)(2)(B), 1170.12, subd. (c)(2)(B).) For these offenders, credit (although limited by the Three Strikes law to 20 percent) remains available to reduce the determinate portion of their sentence. The majority's interpretation of the credit provisions of the Three Strikes law thus retains some meaning for some third strike offenders. Only when a third strike offender receives solely an indeterminate term, with no accompanying determinate component, does the credit-limiting language of the Three Strikes law have no apparent meaning.
Although it thus seems likely the scope of the credit provision of the Three Strikes law is much less than lawmakers thought, can we conclude the law is ambiguous? If so, we could accord much more weight to the legislative history (which tends to favor defendant) and also invoke the rule of lenity (also favorable to him). (People v. Hazelton (1996) 14 Cal.4th 101, 106, 58 Cal.Rptr.2d 443, 926 P.2d 423 [court must examine legislative history when meaning of statutory language is ambiguous]; People v. Garcia (1999) 21 Cal.4th 1, 10, 87 Cal.Rptr.2d 114, 980 P.2d 829 [explaining rule of lenity].) Ambiguity, of course, is a matter of degree. Although I find the law poorly drafted and confusing, I agree with the majority that the statutory language is not so ambiguous that we should deviate from its plain meaning and turn for guidance to the legislative history or the rule of lenity.
As the majority explains, we interpret the Three Strikes law as enacted, not its legislative or initiative history. We must take as our guide the actual statutory language, as it represents the truest, latest, and most definitive expression of the lawmakers' intent. Although our conclusion today may in reality be contrary to the true intentions of the lawmakers, "[w]e could not ... ignore the actual words of the statute in an attempt to vindicate our perception of the Legislature's purpose in enacting the law." (Murillo v. Fleetwood Enterprises, Inc. (1998) 17 Cal.4th 985, 993, 73 Cal.Rptr.2d 682, 953 P.2d 858.) The Legislature, of course, remains free to *772 provide credit-earning opportunities for third strike inmates if it concludes such opportunities serve the penological and rehabilitative goals of our state.

CONCLUSION
This case fits neatly into what is becoming an ongoing series of recent challenges to portions of the Three Strikes law, whose drafting shortcomings have required this court to bridge the gap, fill in the blanks, resolve the conflicts, and fashion what in some cases is a regrettably complex scheme of criminal procedure. (See, e.g., People v. Jefferson, supra, 21 Cal.4th 86, 86 Cal.Rptr.2d 893, 980 P.2d 441 [how to apply the Three Strikes law to a sentence of straight life, when there is no minimum term to double]; People v. Garcia, supra, 21 Cal.4th 1, 87 Cal.Rptr.2d 114, 980 P.2d 829 [potential conflict in the definition of juvenile criminal adjudications that can qualify as "strikes"]; People v. Hazelton, supra, 14 Cal.4th 101, 58 Cal.Rptr.2d 443, 926 P.2d 423 [resolving potential conflict between initiative and legislative versions of Three Strikes law with regard to out-of-state prior convictions].)
This case is a striking example of such complexity. The final result of our decision is this: (1) most second strike offenders can earn credit while in prison, but are limited to a maximum of 20 percent; (2) some second strike offendersi.e, those, as in People v. Jefferson, supra, 21 Cal.4th 86, 86 Cal.Rptr.2d 893, 980 P.2d 441, whose base crime called for a penalty of a straight life termcannot earn credit in prison because they are serving an indeterminate term, albeit one with a doubled minimum eligible parole date; (3) some third strike offenders can earn some credit, also limited to a maximum of 20 percent, but subject to the further limitation that the credit can reduce only the determinate portion of their sentence; and (4) other third strike offenders, such as petitioner here, who were given an indeterminate sentence with a minimum term but no determinate component, are prohibited from earning any credit. Or, as the majority explains it (maj. opn, ante, 103 Cal.Rptr.2d at p. 766, 16 P.3d at p. 180), for third strike inmates in this last category, the maximum amount of credit they can earn is 20 percent of nothing.
Although I find this result very likely at odds with the intent of the lawmakers, it admittedly gives effect to the plain meaning of the statutory language. The history of the Three Strikes law, including the statements of the proponents of the law, strongly suggests the lawmakers expected third strike offenders would be able to earn credit for good behavior in prison. Nonetheless, because I conclude the majority's result is preferable to permitting defendant to earn in-prison credit without specific statutory authorization, I join the majority opinion.
NOTES
[1] The Court of Appeal, we are informed, subsequently disposed of Cervera's appeal by affirming the judgment.
[2] We note in passing that Cervera does not argue, as he had argued in the Court of Appeal, that the asserted ambiguity whether the Three Strikes law authorizes or allows a defendant with three strikes to be awarded article 2.5 prison conduct credits against his mandatory indeterminate term of life imprisonment should be resolved in his favor through the application of the canon of statutory construction that counsels against an interpretation "making some words surplusage" (Watkins v. Real Estate Commissioner (1960) 182 Cal.App.2d 397, 400, 6 Cal.Rptr. 191). The argument went substantially as follows: "The Three Strikes law implies that a defendant with three strikes as well as a defendant with two strikes is eligible for an award of article 2.5 prison conduct credits. Unless it were construed to authorize or allow such a defendant to be awarded such credits against his mandatory indeterminate term of life imprisonment, it would be empty in its implication. That is because his indeterminate term of life imprisonment is indeed mandatory." The reason that Cervera does not present an argument of this kind seems to us to be plain: Any such argument would fail. Even without the construction of the Three Strikes law contended for, a defendant with three strikes is indeed eligible for an award of article 2.5 prison conduct credits, albeit only against any qualifying determinate term that happens to be imposed. It is true that a given defendant with three strikes might be ineligible for an award of such credits, as when the only term imposed is the mandatory indeterminate term of life imprisonment. But it is also true that a given defendant with two strikes might himself be ineligible, as when the only term imposed is itself an indeterminate term. The Three Strikes law does in fact imply that a defendant with two strikes and a defendant with three strikes are each eligible for an award of article 2.5 prison conduct credits. But it does not imply, still less state, that each is eligible for an award of such credits against any term, whether determinate or indeterminate.
[3] Cervera requests us to take judicial notice of how CDC applies Penal Code section 12022.53, subdivision (i). We hereby do so. As a "reviewing court" (Evid.Code, § 459, subd. (a)), we may judicially notice "[f]acts ... that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy" (id., § 452, subd. (h))which include the object of the request here. Penal Code section 12022.53 generally provides for enhancement of sentence for a defendant convicted of any of certain specified felonies, in the amount of a determinate term of imprisonment for 10 years, a determinate term of imprisonment for 20 years, or an indeterminate term of life imprisonment with a minimum term of 25 years, each triggered by specified circumstances involving personal use of a firearm. Penal Code section 12022.53, subdivision (i), states in pertinent part: "The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3" of the Penal Code "shall not exceed 15 percent of the total term of imprisonment imposed on a defendant upon whom a sentence is imposed pursuant to this section." CDC applies the foregoing to authorize or allow some such defendants to be awarded article 2.5 prison conduct credits against the indeterminate term of life imprisonment thereunder, specifically, against such indeterminate term's minimum term, as well as against any qualifying determinate term that happens to be imposed, subject only to the specified limitation to 15 percent of the total term.

Our taking of judicial notice of how CDC applies Penal Code section 12022.53, subdivision (i), benefits Cervera not at all. To the extent that CDC's practice in this regard is inconsistent with the analysis set out in the text, it does not undermine that analysis, but is rather undermined thereby.
[1] All undesignated statutory references are to the Penal Code.
[2] Section 190 has since been amended specifically to deny credit to murderers. (See § 190, subd. (e), as amended by Stats. 1997, ch. 413, § 1 [Prop. 222, as approved by voters, June 2, 1998, eff. June 3, 1998].)
[3] It is possible for a second strike offender to have the applicable term of imprisonment for his present crime be an indeterminate one. (See People v. Jefferson (1999) 21 Cal.4th 86, 86 Cal.Rptr.2d 893, 980 P.2d 441.) If so, the second strike sentence would not be a determinate one.